Kenneth J. STRACHAN, Plaintiff,

v.

CITY OF FEDERAL HEIGHTS, COLORADO et al., Defendants.

No. 91–C–672.

United States District Court, D. Colorado.

Nov. 17, 1993.

Craig Truman, Denver, CO, for plaintiff.

Louis B. Bruno, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, Kenneth J. Strachan, commenced this action in the state district court for Adams County, Colorado, against the City of Federal Heights and four of its police officers, namely Sergeant George Weidler and Officers Don Vallero, Paula Kittay and Frank Turek (collectively the municipal defendants). The other defendants are Lincoln Colorado Management, Inc. and Lincoln Property Company, Inc. (collectively Lincoln). The complaint asserts claims under 42 U.S.C. § 1983 (first claim) and on theories of negligence (second claim) and respondeat superior (third claim).[1]

On April 24, 1991, the defendants removed the action to this court. Lincoln and the municipal defendants each filed a motion for

1. The municipal defendants are named in the first and second claims. Lincoln is named as a defendant in the second and third claims. (Plaintiff's Second Amended Complaint, pp. 4–6.)

summary judgment pursuant to Fed.R.Civ.P. 56. Mr. Strachan responded by confessing part of the municipal defendants' motion, but otherwise opposing it and opposing Lincoln's motion.[2]

The issues have been fully briefed and oral argument has been heard. Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

## I. FACTUAL BACKGROUND.

At approximately 11:30 p.m. on March 20, 1990, Mr. Strachan, who had earlier consumed drugs and alcohol, was stopped by the Northglenn, Colorado police and charged with driving under the influence. He was released to the custody of his brother who drove him home to the Hunter's Cove apartment complex in Federal Heights, Colorado.

Back at his apartment, Mr. Strachan, who was alone, slammed doors in frustration at being arrested. He then called his girlfriend in Durango. Later, using a .22 caliber Bugno revolver, he fired four shots out his bedroom's open, but screened, window. Mr. Strachan maintains that after he fired the shots, he placed the revolver on a shelf in his closet.

Two residents of the Hunter's Cove apartments phoned the Federal Heights police reporting the sound of gunfire from Mr. Strachan's apartment. Sergeant Weidler and Officers Kittay, Turek and Vallero responded.

Sergeant Weidler and Officer Vallero knocked on Mr. Strachan's door, but did not receive a response. Mr. Strachan maintains that he did not hear the knock on his door.

The officers summoned Michael Joos, an off-duty Federal Heights police officer who lived in the apartment complex and served as a courtesy patrolman in exchange for reduced rent. He obtained a telephone number and key for the apartment where Mr. Strachan was staying, as well as records listing Richard Ealey and Michael Johns as the only tenants.

A Federal Heights Police Department dispatcher telephoned the apartment and, without identifying himself, asked for Richard or Michael. Mr. Strachan replied that he was neither Richard nor Michael and that the caller must have the wrong number. He then hung up. The dispatcher tried to telephone again, but received no response. Mr. Strachan maintains that he went back to sleep.

Sergeant Weidler believed that a warrantless entry of the apartment was justified under the doctrine of exigent circumstances. Federal Heights Police Chief Lester Acker agreed and by radio approved the entry.

Sergeant Weidler and Officers Turek, Kittay, Joos and Vallero returned to the apartment, each with a service revolver drawn except for Officer Vallero who was armed with a twelve gauge shotgun. There had been no discussion of the objectives of the entry nor the procedures to be followed. Sergeant Weidler opened the door and loudly announced that the police were present. While kneeling on the landing outside, he directed that anyone in the apartment come into the living room. There was no response.

The officers entered the apartment. During the subsequent security sweep, the officers made no further attempt to identify themselves, communicating only by hand signals.

The last room to be searched was Mr. Strachan's bedroom. There the officers took up positions outside the closed door. Officer Kittay, a rookie, stood in an exposed position in front of the door with Officer Vallero next to her. Sergeant Weidler pushed the door open with his revolver and shined his flashlight into the room. Mr. Strachan, who was in bed, rolled over, directing his attention toward the door. Officer Vallero fired a single shot from his shotgun, striking Mr. Strachan in his left knee and calf.

Sergeant Weidler testified that immediately after the shooting, Officer Vallero maintained his aim into the room for fifteen or twenty seconds, but did not rechamber a live

---

**2.** Mr. Strachan confessed the municipal defendants' summary judgment motion as to his claim based on the Eighth Amendment. Also Mr. Strachan states that he will not seek damages for an allegedly unreasonable search of his apartment. Therefore summary judgment will be entered for the defendants and against the plaintiff on these claims.

round, nor respond when asked what he saw. (Deposition of George Weidler at 170–75.) Officer Joos testified that immediately after firing, Officer Vallero pointed the shotgun toward the ceiling, then backed away from the doorway saying, "Shit, shit, shit!" and "Send them." (Deposition of Michael Joos at 161–67.) Officer Vallero did not warn his fellow officers that Mr. Strachan was armed. (*Id.* at 167.)

The municipal defendants maintain that Mr. Strachan rolled over holding the .22 caliber Bugno revolver. Mr. Strachan contends that he was unarmed and that the revolver was still on a shelf in his closet.

Following the shooting, five police officers were in the ten by twelve foot room. Sergeant Weidler saw what appeared to be the butt of a gun on the closet shelf. He was told that it was a BB gun. (Weidler Depo. at 192–97.) The alleged BB gun was never taken into custody. Sergeant Weidler searched through the blankets looking for a gun, but did not find one. (*Id.* at 200–01.) No gun was found in the search immediately after the shooting.

The Adams County Special Investigation Team (the shoot team) later searched Mr. Strachan's apartment collecting evidence and taking items into custody. Prior to stripping the bed as part of that inventory process, an investigator traced a line on the bottom sheet with a felt tip marker to indicate where the bedding was placed before it was removed. (Deposition of Christopher J. Pardo at 98.) The investigator did not see a gun while he was drawing that line. (Pardo Depo. at 116.) The .22 caliber Bugno revolver was then found. (*Id.* at 111.) A photograph taken before the gun was moved shows it lying on top of the line. (Pla.Ex. 17.)

In an interview on the morning of the shooting, Officer Vallero stated that before he fired he saw a "flash of a metal reflection, a dull metal reflection" in Mr. Strachan's left hand, but had no idea what it was. (Pla.Ex. 12 at 14.) In a July 3, 1990 interview, Officer Vallero stated that he was sure he had seen a revolver in Mr. Strachan's left hand. The Federal Heights Police Department Professional Standards Review Board exonerated Officer Vallero of any fault in the shooting.

## II. MUNICIPAL DEFENDANTS' SUMMARY JUDGMENT MOTION.

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth evidence of specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### A. *Section 1983 Claim Against the Individual Officers.*

Mr. Strachan's § 1983 claim is two-fold. First, he asserts that the defendants used excessive force in violation of the Fourth Amendment. Second, he contends that the defendants concealed or created evidence to justify the shooting, thereby denying him meaningful access to the courts.

The individual municipal defendants contend that they are protected by qualified immunity which shields government officials from civil liability provided their alleged conduct does not violate clearly established law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

Once the defendant raises the defense, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." *Dixon v. Richer,* 922 F.2d 1456, 1460 (10th Cir.1991) (citations omitted).

It is not sufficient for a plaintiff simply to identify a right in the abstract and then allege that the defendant has violated it. *Hilliard v. City and County of Denver,* 930 F.2d 1516, 1518 (10th Cir.), *cert. denied,* ——

U.S. ——, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991).

> "Instead the ... 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citations omitted).

If the plaintiff meets this burden, the defendant assumes the normal burden of a movant for summary judgment; he must establish that no material facts remain in dispute that would defeat his claim of qualified immunity. *Dixon,* 922 F.2d at 1460.

■ A claim of qualified immunity presents a question of law, and the court may not avoid deciding it by framing it as a factual issue. *Id.* Rather the court must identify the law upon which it relies and the basis for its conclusion. *Id.* The inquiry, however, may not be resolved at the summary judgment stage when there are unresolved issues of material fact affecting the viability of the defense. *Id.* at 1463.

### 1. *Excessive Force Claim against Officer Vallero.*

■ The Fourth Amendment prohibition against unreasonable searches and seizures includes the right to be free from excessive force during an arrest. *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985); *Zuchel v. Spinharney,* 890 F.2d 273 (10th Cir.1989). This proposition, however, merely states the right in the abstract. Therefore the inquiry must be narrowed:

> "Whether the force used in making an arrest was unreasonable is an issue to be determined in light of all the circumstances of each case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and actively resists arrest or attempts to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).

The question should be resolved from the perspective of a reasonable officer on the scene, recognizing that police officers often must make split-second judgments about the proper amount of force to be used in circumstances that are tense, uncertain and rapidly evolving. *Id.* at 396–97, 109 S.Ct. at 1871. The inquiry is one of "objective reasonableness." *Id.* at 399, 109 S.Ct. at 1873.

In a factually similar case, a police officer shot and killed a suspect he mistakenly thought was armed with a knife. *Zuchel v. Spinharney,* 890 F.2d 273 (10th Cir.1989). The officer moved for summary judgment in the subsequent § 1983 action, maintaining that his conduct was objectively reasonable, and therefore he was entitled to qualified immunity. The trial court denied the motion and the Tenth Circuit affirmed. The court of appeals noted that the officer's version of the events was supported by most of the evidence, but conflicting evidence did exist. As the court explained: "Neither we, nor the district court, are entitled to weigh evidence or pass on the credibility of witnesses in deciding summary judgment issues." 890 F.2d at 275–76; *see also Dixon,* 922 F.2d at 1463.

■ Here as in *Zuchel,* there is evidence to support the position that Officer Vallero's conduct was not objectively reasonable. Sergeant Weidler testified that he did not expect Officer Vallero to fire and was surprised by the shot. (Weidler Depo. at 168–69.) Officer Kittay said Officer Vallero fired into a darkened room. There was no mention of a gun immediately after the shooting. The circumstances surrounding discovery of the gun are somewhat suspicious. Moreover, a twenty year veteran of the Los Angeles police force testified in his deposition that the entry operation was "reckless" and designed to encourage a shooting. (Deposition of Lou Reiter at 69–70.)

Based on the above evidence a reasonable jury might be justified in drawing the inference that Officer Vallero participated in a reckless operation that resulted in the shooting of an unarmed man. Thus I conclude that Mr. Strachan has met his burden of coming forward with facts and allegations sufficient to show that Officer Vallero violated clearly established law at the time he shot Mr. Strachan. *Dixon,* 922 F.2d at 1460.

As a result, Officer Vallero has the burden of establishing that no material facts remain in dispute that would defeat his claim of qualified immunity. *Id.; see also Powell v. Mikulecky*, 891 F.2d 1454, 1456 (10th Cir. 1989). As the above discussion shows, however, genuine issues of material fact do remain. Therefore granting summary judgment would be improper.

2. *Excessive Force Claim against Sergeant Weidler and Officers Kittay and Turek.*

■ Sergeant Weidler and Officers Kittay and Turek maintain that they are entitled to summary judgment because there is no evidence that they personally used excessive force. Mr. Strachan responds that a police officer who participates in an operation reasonably likely to result in the use of excessive force may be liable under § 1983 even though the individual officer does not wield that force.

Mr. Strachan cites two cases in support of his argument; *Grandstaff v. Borger*, 767 F.2d 161 (5th Cir.1985) and *Gutierrez–Rodriquez v. Cartagena*, 882 F.2d 553 (1st Cir. 1989). In *Grandstaff*, a bystander was killed in a barrage of police gunfire so intense that it was impossible to determine which officer fired the shot that killed the plaintiff. The court stated:

> "The firestorm that killed James Grandstaff was in all respects a joint operation: the same recklessness, the same circumstances, and the same object. Each participant is as much at fault as the others, and all are liable for the foreseeable consequences." 767 F.2d at 168.

In *Cartagena*, officers who fired their weapons, but not the shot that struck the plaintiff, argued that they were not liable for the plaintiff's injuries. The First Circuit disagreed, noting that liability under § 1983 extends to those who " 'subject or *cause to be subjected*, any citizen ... to a deprivation of rights ... secured by the Constitution.' " 882 F.2d at 560–61 (quoting 42 U.S.C. § 1983) (emphasis added). The court explained that:

> "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of

acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.*

Thus two questions must be answered to resolve this issue. First, is there evidence that Sergeant Weidler and Officers Kittay and Turek caused Mr. Strachan to be deprived of his constitutional rights so as to bring their conduct within the scope of § 1983 liability? And second, if there is such evidence, was their conduct objectively reasonable, thus entitling them to qualified immunity?

As noted above, Mr. Strachan's expert witness stated that the *entire operation* was substandard and likely to result in a shooting. This testimony is sufficient to present a genuine issue of material fact as to whether Sergeant Weidler and Officers Kittay and Turek participated in an operation that caused Mr. Strachan to be deprived of his constitutional rights. That evidence also creates a genuine issue of material fact as to whether the three officers' conduct was objectively reasonable. Therefore entering summary judgment would be inappropriate.

3. *Denial of Access to the Courts.*

■ Defendants concede that creating false evidence would violate clearly established constitutional rights. Therefore to withstand the defendants' motion for summary judgment as to this point Mr. Strachan need only show that a factual dispute exists as to whether the defendants violated that right. Defendants contend there is no such evidence.

Here, as in most conspiracy cases, the plaintiff must rely on circumstantial evidence. *See Stump v. Gates*, 777 F.Supp. 808 (D.Colo.1991). Mr. Strachan maintains that he put the .22 caliber Bugno in his closet. Immediately after the shooting Sergeant Weidler saw what appeared to be a gun in the closet. Sergeant Weidler did not find a gun in the bed although he took down the blankets and shook them in an effort to find one. The shoot team did find a gun in the bed, but did not find one in the closet. Statements provided by the officers appeared to evolve, changing as time passed. That evidence was withheld from Mr. Strachan

until after a jury had been empaneled in his criminal trial. That evidence was crucial enough to cause the trial court to dismiss the charges.

Viewing the record in the light most favorable to Mr. Strachan, a genuine issue of material fact remains as to whether the defendants created or concealed evidence in an effort to justify an allegedly improper use of police force. Therefore summary judgment cannot be granted on this issue.

### B. *Section 1983 Claim Against the City.*

 Section 1983 liability may be imposed on a municipality if the alleged injury arose from execution of an official policy or custom. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However a single instance of unconstitutional activity is insufficient to impose liability on a municipality unless there is proof that the deprivation was caused by a then-existing policy. *Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Zawacki v. Colorado Springs,* 759 F.Supp. 655 (D.Colo.1991). Thus Federal Heights may be liable under § 1983 if Mr. Strachan's injuries stemmed from a then-existing municipal policy or custom.

In response to a request for admissions, Federal Heights stated:

> These Defendants admit that the conduct of Don Vallero in entering the apartment in the early morning of March 21, 1990 *and in shooting Kenneth J. Strachan* with a shotgun was in conformance with the custom and policy of the City of Federal Heights. (Plaintiff's ex., 23.) (Emphasis added.)

Federal Rule of Civil Procedure 36(b) states in pertinent part: "Any matter admitted under this rule is conclusively established...." Therefore it is conclusively established that the shooting of Mr. Strachan was in conformance with Federal Heights policy.

This, of course, does not resolve the question of whether that shooting deprived Mr. Strachan of his constitutional rights. Federal Heights maintains that its admission does not concede that its policy was unconstitutional. However, as discussed earlier, it is possible that the shooting did violate Mr. Strachan's constitutional rights. As a result, it would be anomalous to hold Officer Vallero responsible for violating Mr. Strachan's rights, but to release the city after it has admitted that the shooting conformed to its policy. The court has no choice but to deny the city's motion for summary judgment.

### C. *Negligence Claims.*

The municipal defendants contend that Mr. Strachan's negligence claims are barred by the Colorado Governmental Immunity Act (CGIA). Colo.Rev.Stat. §§ 24–10–101 *et seq.*

#### 1. *Negligence Claims against the Officers.*

Actions brought against police officers are subject to the CGIA. Colo.Rev.Stat. § 24–10–118(2). Under that provision governmental employees are immune from negligence claims unless their alleged conduct was willful and wanton. *Id.* The term "willful and wanton" is not defined in the CGIA. However, Colorado's statutory provisions regarding tort damages define the term as

> "conduct purposefully committed which the actor *must have realized* as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." Colo.Rev.Stat. § 13–21–102(1)(b) (1987 Repl.Vol.) (emphasis added).

The language here is cast in subjective, rather than objective, terms. As a result, the evidence used by Mr. Strachan to resist summary judgment on the issue of qualified immunity—evidence that the operation was not objectively reasonable—is not sufficient to establish willful and wanton conduct. Instead he must come forward with evidence that the officers *subjectively realized* that they were acting recklessly. This he has not done. Therefore I hold that Mr. Strachan's negligence claims against the individual municipal defendants are barred by the CGIA.

#### 2. *Negligence Claim against the City.*

A municipality is immune from claims of negligence except where governmental immunity is expressly waived. Colo.Rev.Stat. § 24–10–106(1). Mr. Strachan's negligence

claim does not fit within any statutory provision waiving governmental immunity. Therefore this claim is barred by the CGIA.

## III. LINCOLN'S MOTION FOR SUMMARY JUDGMENT.

Mr. Strachan asserts two claims against Lincoln: one for negligence, the other under the doctrine of respondeat superior.

### A. *Lincoln's Alleged Negligence.*

■ Mr. Strachan contends that Lincoln had notice that he lived in the apartment; therefore it had a duty to provide the police with his name.

Whether a defendant owes a legal duty to a plaintiff is a question of law for the court. *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141 (Colo.1993). Mr. Strachan has not offered convincing legal authority to support his position, nor has the court's independent research uncovered any. This is not a case where the landlord owed a duty to tenants as a result of voluntary security measures undertaken by the landlord. *See, e.g., Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984). The record system was not part of a voluntarily created security system.[3]

Because there is no legal basis for Lincoln's alleged duty to Mr. Strachan, Lincoln's motion for summary judgment will be granted.

### B. *Respondeat Superior.*

■ Mr. Strachan maintains that when Officer Joos entered the apartment he was acting, in part, as a security guard for Lincoln, and was in the best position to influence how the apartment was to be searched.[4]

Respondeat superior liability depends on a showing that the tortfeasor is under the control of the employer. *Bauer v. Southwest Denver Mental Health Ctr.*, 701 P.2d 114 (Colo.App.1985); *see, e.g., Adams v. Leidholt*, 195 Colo. 450, 579 P.2d 618 (1978). At the time Officer Joos entered the apartment, he was subject to the control of his superior officer, Sergeant Weidler, and not subject to the control of Lincoln. Thus, there is no legal basis for this claim and summary judgment is appropriate.

Accordingly, IT IS ORDERED that:

(1) The municipal defendants' motion for summary judgment is granted in part and denied in part;

(2) Judgment shall be entered for the municipal defendants and against the plaintiff on the plaintiff's claim based on the Eighth Amendment;

(3) Judgment shall be entered for the municipal defendants and against the plaintiff on the plaintiff's claim based on an alleged unreasonable search;

(4) Judgment shall be entered for the municipal defendants and against the plaintiff on the plaintiff's negligence claims;

(5) Defendant Lincoln's motion for summary judgment is granted;

(6) Judgment shall be entered for the defendant Lincoln and against the plaintiff on all of the plaintiff's claims against Lincoln; and

(7) The remaining parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding would facilitate settlement.

---

**3.** Moreover, it is undisputed that Mr. Strachan's name was not on the lease because his roommate requested that it not be included.

**4.** Although Joos was originally named as a defendant, Strachan stipulated to dismissing his claims against Joos.