Sergio Castillo DIAZ, Plaintiff,

v.

Ignacio SALAZAR, Individually and in his official capacity as a police officer with the Santa Fe Police Department; James Lujan, Individually and in his official capacity as a police officer with the Santa Fe Police Department; Martin Lopez, Individually and in his official capacity as a police officer with the Santa Fe Police Department; David Webb, Individually and in his official capacity as a police officer with the Santa Fe Police Department; and City of Santa Fe, Defendants.

No. CIV 94–0596 LH/LCS.

United States District Court, D. New Mexico.

March 21, 1996.

Brad D. Hall, Kathryn A. Hammel, Gaddy, Rakes & Hall, Albuquerque, NM, for Plaintiff.

Paul M. Schneider, Mark A. Basham, NM Legal Bureau/RMD, Santa Fe, NM; Mark D. Jarmie, Sharp, Jarmie & Scholl, Albuquerque, NM, for Defendants.

## MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** is before the Court on Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb (Docket No. 126); Defendant Salazar's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendant Ignacio Salazar (Docket No. 128); Defendant City of Santa Fe's Motion for Summary Judgment on the Issue of Municipal Liability (Docket No. 124); and Plaintiff's Motion for Summary Judgment on the Counterclaims (Docket No. 143). Having reviewed the submissions of the parties and argument of counsel, having considered the applicable law, and being otherwise fully informed in the matter, the Court finds that Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb is well taken and will be granted, in part, and denied, in part; Defendant Salazar's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendant Ignacio Salazar is not well taken and will be denied; Defendant City of Santa Fe's Motion for Summary Judgment on the Issue of Municipal Liability is not well taken and will be denied; and Plaintiff's Motion for Summary Judgment on the Counterclaims is not well taken and will be denied.

### Background

Plaintiff brings this case under 42 U.S.C. § 1983 and pendent state tort law for injuries resulting from the alleged use of excessive force during his arrest by members of the Santa Fe Police Department. Plaintiff Sergio Castillo Diaz contends four Santa Fe police officers violated his constitutional rights by shooting him during an incident on May 31, 1992. Mr. Diaz further contends that the City of Santa Fe violated his constitutional rights by failing to properly train its

officers and by failing to provide them with non-lethal alternatives for dealing with drunk and disorderly citizens.

The parties do not dispute the following material facts. On May 31, 1992, Mr. Diaz consumed two to three bottles of wine at his home in Santa Fe following lunch. Mr. Diaz then walked to a friend's house, whom he later learned was not home. Upon leaving his friend's house, Mr. Diaz discovered his wife and two daughters waiting in their Ford Bronco to take him home. In an effort to convince his wife to leave, Mr. Diaz broke out three of the windows in the Bronco with a rock. Defendant Officer Lujan received a report of a disturbance occurring on Maez Road and responded. Officer Lujan was informed that there was "a truck parked in the middle of the road with the windows busted out." Upon arriving at the scene, Officer Lujan observed Mr. Diaz standing near the Bronco and his wife and two daughters. Other officers, including Officers Webb and Lopez, arrived at the scene. At some point, Mr. Diaz took out a knife.[1] The officers drew their firearms, pointed them at Mr. Diaz and told him to drop the knife.[2] While continually backing away from the officers, Mr. Diaz refused to drop the knife, told the officers to go away and let him go home, and used profanity. Eventually, Mr. Diaz backed approximately 250 feet down Maez Road until his progress was halted by a grouping of trees and he could retreat no further. At this point, Officers Lujan, Lopez and Webb formed a semi-circle around Mr. Diaz and continued to demand that he drop the knife. The officers were in close proximity to Mr. Diaz.[3]

Officer Salazar then arrived at the scene, exited his car, and drew his firearm. He joined the other officers in forming a semi-circle around Mr. Diaz. By this time, a number of civilians had exited their residences and were observing the event. The parties dispute what happened next. Defen-

---

1. The parties dispute the manner in which Mr. Diaz held the knife in relation to the defendant officers. Several witnesses state that Mr. Diaz never waved the knife at the officers, but rather held it down toward the ground. The officers contend Mr. Diaz waved the knife at them.

2. The parties dispute whether Mr. Diaz was told to drop the knife in both English and Spanish.

3. Estimates of the distance between the officers and Mr. Diaz range from one foot away to 5 to 6 feet or more away.

**1092**

dants contend that Mr. Diaz made a movement forward, variously described as "a step forward" or a "one to two-inch movement with his left foot." Plaintiff asserts Mr. Diaz never made a move toward the officers. In any event, upon observing what he thought to be a step toward his fellow officers by Mr. Diaz, Officer Salazar shot Mr. Diaz.

Mr. Diaz was subsequently convicted in New Mexico state court of four counts of aggravated assault upon Officers Lopez, Lujan, Salazar, and Webb. On appeal, the New Mexico Court of Appeals reversed all four convictions and remanded the case to the trial court for failing to include an instruction on the lesser-included offense of resisting arrest. Indeed, the Court of Appeals opined that the testimony and evidence before the jury "suggests that the officers may not have been truthful when they testified they were 'afraid' of [Mr. Diaz]."

### Standard for Summary Judgment

A summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On review, the party opposing summary judgment benefits from all reasonable doubts in determining whether a genuine material factual issue exists.[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986) (citing to *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

Rule 56 of the Federal Rules of Civil Procedure provides that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 322–323, 106 S.Ct. at 2552–53. If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. Fed.R.Civ.P. 56(e).

### Analysis

### I. DEFENDANT OFFICERS' MOTIONS FOR SUMMARY JUDGMENT

I begin by addressing the two motions for summary judgment submitted by the individual defendant officers. In his Section 1983 claims against these officers, Plaintiff alleges they committed an unreasonable seizure, in violation of the Fourth and Fourteenth Amendments, by employing excessive force during his arrest. In particular, Plaintiff contends the unreasonable actions of the officers created the "dangerous situation" in which Officer Salazar felt compelled to use deadly force against him. Plaintiff argues the defendant officers failed to follow their training, failed to establish an appropriate and safe perimeter around a suspect armed with a knife, failed to properly de-escalate the situation, and failed to apply intermediate force tools to effect his seizure.

The individual defendant officers have variously moved for summary judgment as to the claims against them on the grounds of qualified immunity, estoppel, and that their actions as to the Plaintiff were objectively reasonable as a matter of law.

The parties agree that Plaintiff's excessive force claims are governed by the "objective reasonableness" standard enunciated by the Supreme Court in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham,* the Court held: "that all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' ap-

---

**4.** "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555.

proach." *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871. The "reasonableness" inquiry in an excessive force case is an objective one.

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–397, 109 S.Ct. at 1872. The intent of the officers, whether malicious or good, is consequently irrelevant to the reasonableness inquiry. However, the Court must pay careful attention to the totality of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396, 109 S.Ct. at 1871–72 (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)). In the final analysis, an officer's use of deadly force will be justified under the Fourth Amendment if a reasonable officer in the same position would have had probable cause to believe there was a threat of serious physical harm to himself or to others. *Sevier v. City of Lawrence,* 60 F.3d 695, 699 (10th Cir.1995).

### Qualified Immunity Standard

 Qualified immunity is a recognized legal doctrine that protects government officers from having to defend themselves from baseless lawsuits. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). Qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Losavio,* 847 F.2d at 645. In *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277

(1991), the Supreme Court made it clear that "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Id.* at 232, 111 S.Ct. at 1793 (emphasis added); *see also, Maldonado v. Josey,* 975 F.2d 727, 729 (10th Cir.1992) (citing *Siegert* and noting that the threshold inquiry in analyzing a qualified immunity claim is whether the complaint states a constitutional claim), *cert. denied,* 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff "to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Losavio,* 847 F.2d at 646.

 As a practical matter, the qualified immunity defense in excessive force cases is of limited value. While qualified immunity is a powerful defense in other contexts, in excessive force cases the substantive inquiry that decides whether the force exerted by police was so excessive that it violated the Fourth Amendment is the same inquiry that decides whether the qualified immunity defense is available to the government actor. *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991). Police use of excessive force is an established constitutional violation. *Garner,* 471 U.S. at 7–8, 105 S.Ct. at 1699–1700 (1985). In an excessive force case, the fact finder determines if the police officer is liable by deciding if the force he used was objectively unreasonable. *Graham,* 490 U.S. at 399, 109 S.Ct. at 1873–74. Similarly, a government official may not defend based on qualified immunity if it is decided that no reasonable government official acting in the same place and under the same circumstances would have believed his actions were legal. *Rozek v. Topolnicki,* 865 F.2d 1154, 1157 (10th Cir.1989). Thus, given the common focus on reasonableness and the clearly-established unlawfulness of excessive force, the qualified immunity and excessive force analysis do not differ in any significant respect.

## A. *Effect of Mr. Diaz's State Court Convictions*

As a preliminary matter, I will first address the effect of Mr. Diaz's four convictions in state court for aggravated assault stemming from this incident. As noted above, these convictions have since been reversed by the New Mexico Court of Appeals and remanded for a new trial. Defendants nevertheless contend these convictions have preclusive effect on a number of issues in this case, most notably the objective reasonableness of the officers' conduct and Plaintiff's assault and battery claims. In particular, Defendants assert the fact that Mr. Diaz was indicted, by a duly-constituted grand jury, of four counts of aggravated assault establishes probable cause, as a matter of law, to believe Mr. Diaz committed these felonies. As a result, Defendants argue Mr. Diaz is now estopped from denying that the officers had probable cause to believe they were under assault, thereby rendering their actions objectively reasonable. Additionally, Defendants argue, the fact that the Court of Appeals did not throw out the indictment when it reversed the aggravated assault convictions further establishes probable cause for the officers' beliefs of imminent danger.

■ I cannot agree with the position taken by Defendants. First, counsel for the defendant officers cites no authority for such a remarkable position, nor have I found any. An indictment by a duly-constituted grand jury may form the basis for a defense to a subsequent suit for false arrest, *see, e.g., Rodriguez v. Ritchey*, 556 F.2d 1185 (5th Cir.1977); however, I find no similar support for such a proposition in the context of a Section 1983 claim for excessive force. Indeed, such a proposition would closely parallel the doctrine of collateral estoppel. However, collateral estoppel requires that the party against whom estoppel is sought must have been a party to the prior litigation in which the estoppel issue was fully and fairly decided. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Mr. Diaz did not participate in the underlying grand jury process. Additionally, in the context of a grand jury, it would be disingenuous to contend the issue of whether these officers

had probable cause to believe they were in imminent danger from Mr. Diaz was fully and fairly litigated. Finally, estoppel is an equitable doctrine to be employed at the discretion of the trial court. *AA Oilfield Serv. v. New Mexico State Corp. Comm'n*, 118 N.M. 273, 280–81, 881 P.2d 18 (1994). Given the reversal of Mr. Diaz's convictions on appeal, and the basis therefor, I decline to exercise such discretion under the facts presented in this case.

Consequently, Defendants' various motions for summary judgment premised on collateral estoppel must be denied. In particular, Defendants Lujan, Lopez, Webb, and Salazar's motions for summary judgment as to Plaintiff's state law assault claims must be denied.

## B. *Officer Salazar's Motion for Summary Judgment*

Defendant Salazar contends he is entitled to summary judgment on Plaintiff's Section 1983 excessive force claim. Salazar argues that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Under Officer Salazar's view of the facts in this case, it is undisputed that Mr. Diaz "brandished" a knife, that a knife is a deadly weapon, that Mr. Diaz violently assaulted the four officers with the knife, and that Officer Salazar shot Mr. Diaz because he believed he and the other officers at the scene were in danger, and he needed to protect himself and the other officers. Therefore, Officer Salazar asserts, his actions in using deadly force were objectively reasonable, as a matter of law. I disagree.

■ "[W]hether the police used excessive force in a § 1983 case has always been seen as a factual inquiry best answered by the fact finder." *Quezada*, 944 F.2d at 715. Here, the factual record discloses a substantial dispute of material fact regarding whether Mr. Diaz presented an immediate threat of serious physical harm to Officer Salazar or to others at the time he was shot. Although a knife is a deadly weapon, its mere status as such does not create the justification for the use of deadly force. The record reflects a dispute among the witnesses to the shooting as to whether the knife was ever

"brandished" at the defendant officers. Further, it is disputed whether Mr. Diaz ever moved toward the defendant officers, let alone lunged at them or represented a threat to them. Additionally, Officer Salazar's beliefs as to the need to use deadly force are completely irrelevant to my analysis of the objective reasonableness of Officer Salazar's actions. Finally, as I have previously discussed, the four state court convictions of Mr. Diaz for aggravated assault of these four defendant officers is not dispositive or controlling as to any of the issues in this case.

Consequently, I conclude Officer Salazar's Motion for Summary Judgment must be denied.

### C. Officers Lujan, Lopez and Webb's Motion for Summary Judgment

Defendants Lujan, Lopez and Webb contend they are entitled to summary judgment on Plaintiff's Section 1983 claims because Plaintiff cannot show that they violated any of his constitutional rights. It is undisputed that Officer Salazar was the only officer who shot Mr. Diaz. However, Plaintiff claims Defendants Lujan, Lopez, and Webb should also be liable for excessive force due to their conduct prior to the shooting when they surrounded Mr. Diaz and created the "dangerous situation" which directly caused the unreasonable seizure of Mr. Diaz, in violation of the Fourth and Fourteenth Amendments.

Defendants contend there can be no liability for employing deficient tactics or creating a dangerous situation prior to the time a seizure occurs. Citing *Bella v. Chamberlain*, 24 F.3d 1251 (10th Cir.1994), Defendants Lujan, Lopez, and Webb argue that pre-seizure conduct is not subject to Fourth Amendment scrutiny and that Mr. Diaz was not seized until shot by Officer Salazar. For the reasons outlined below, I agree that the non-shooting officers are not liable for the allegedly unreasonable seizure of Mr. Diaz.

To state a claim for excessive force under the Fourth Amendment, Plaintiff must first show that a seizure occurred and then that the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 1382–83, 103 L.Ed.2d 628 (1989). Under the undisputed facts of this case, it is clear that Mr. Diaz was not seized by the defendant officers until shot by Officer Salazar. In *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court made clear that a seizure occurs only when a fleeing person is physically touched by police or when that person submits to a show of authority by police. In adopting this position, the Court expressly stated that an assertion of authority by the police without submission by the fleeing person does not constitute a seizure. *Id.* at 626, 111 S.Ct. at 1550–51. In *Bella*, the Tenth Circuit applied the reasoning of *Hodari D.* to an excessive force claim brought under 42 U.S.C. § 1983. *Bella*, 24 F.3d at 1255. In *Bella*, the plaintiff alleged a defendant customs officer had used excessive force in firing three shots at the plaintiff's helicopter in an effort to force him to land. One of the shots struck the helicopter. A one-hour chase through the air then ensued before the police were finally able to force the helicopter to land at the Albuquerque International Airport where the plaintiff and his abductor were taken into custody. Applying the reasoning of *Hodari D.*, the *Bella* court determined that events occurring approximately one hour prior to the plaintiff's actual seizure would not be considered in determining if the seizure was reasonable. *Id.* at 1256.[5]

Relying on *Bella* and the Tenth Circuit's later decision in *Wilson v. Meeks*, 52 F.3d 1547 (10th Cir.1995), Defendants Lujan, Lopez and Webb contend that pre-seizure conduct is simply not subject to Fourth Amendment scrutiny. Therefore, they argue, their actions in creating a "dangerous situation," even if true, cannot form the basis for a Fourth Amendment violation. While the holdings of these cases tend to support the view expressed by these defendants, I believe a complete review of the Tenth Circuit's decisions in this area reveals a more mea-

---

5. Indeed, the *Bella* court cautioned: "It must be remembered that the Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment." *Id.* (citations and internal quotations omitted).

sured approach to this area of the law. Beginning with *Bella*, the Tenth Circuit has consistently stated that "events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable." *Bella*, 24 F.3d at 1256 n. 7 (citing *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871 and *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699–1700). *See also Sevier*, 60 F.3d at 699 ("The reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.") (citing *Bella*, 24 F.3d at 1256 & n. 7; *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir.1993); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir.1991); and *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1501 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986)); and *Romero v. Board of County Comm'rs*, 60 F.3d 702, 704–05 (10th Cir.1995) ("We recognize that an officer's conduct prior to the suspect's threat of force may be relevant to the reasonableness inquiry if the conduct is 'immediately connected' to the suspect's threat of force and the officer is alleged to have acted with the state of mind required for liability under § 1983.") (citing *Bella*, 24 F.3d at 1256 & n. 7). Indeed, even *Wilson*, relied upon by the defendant officers in this case, supports the view that the totality of the circumstances *surrounding* the seizure must be examined to determine if the force employed was objectively reasonable. *Wilson*, 52 F.3d at 1552–53. Defendants' assertions notwithstanding, I do not read *Wilson* to support the position that an officer cannot be liable, under any circumstances, for creating a dangerous situation in which excessive force necessarily follows. The *Wilson* court held that a citizen does not have a Fourth Amendment right to be free of police actions contributing to the use of deadly force *by that citizen*. *Id.* at 1554 (emphasis added). However, Plaintiff does not contend that the actions of the non-

shooting officers created a situation in which he was constitutionally protected to use deadly force against these officers. Rather, Plaintiff asserts these non-shooting officers can be held liable under Section 1983 for recklessly creating the "dangerous situation" in which excessive force was employed to effect his seizure.

■ I think it clear that the totality-of-the-circumstances calculus used in excessive-force analysis under the Fourth Amendment employs a lens sufficiently wide to encompass those pre-seizure events immediately connected with the actual seizure. To the extent pre-seizure conduct is immediately connected, both contemporaneously and causally, to the eventual seizure at issue, that conduct should be examined in determining the objective reasonableness of the force employed to effect the seizure. *Bella*, 24 F.3d at 1256 & n. 7; *Brower*, 489 U.S. at 599, 109 S.Ct. at 1382–1383.

■ In this case, Officer Salazar clearly seized Mr. Diaz when he shot him. Equally clear, however, is the fact that under *Hodari*, Mr. Diaz was not seized prior to the shot being fired by Officer Salazar. The undisputed facts disclose that Mr. Diaz never submitted to the defendant officers' show of authority. Although I have concluded the objective-reasonableness calculus extends to pre-seizure conduct immediately and causally connected to the actual seizure, the definition of seizure and liability for an unreasonable seizure under the Fourth Amendment cannot extend, under *Hodari*, to include those who did not actually seize the suspect. Therefore, Officers Lujan, Lopez, and Webb cannot be directly liable for unreasonably *seizing* Mr. Diaz. Their liability, if at all, must derive from either their joint participation in the seizure of Mr. Diaz or from the fact that their pre-seizure conduct "caused" the alleged unreasonable seizure by Officer Salazar.[6] I will consider each of these theories in turn.

---

6. I note that Plaintiff does not assert a "danger creation" theory under the Fourteenth Amendment's substantive due process clause. *See, e.g., DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998,

1005–1006, 103 L.Ed.2d 249 (1989); and *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995). However, I do not believe such a claim is supportable under the facts of this case. A state actor is liable for creating a dangerous situation

Some courts have held officers liable in excessive force cases even though their actions did not directly cause the plaintiff's injuries. *See, e.g., Starks v. Enyart,* 5 F.3d 230 (7th Cir.1993); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553 (1st Cir.1989); *Grandstaff v. Borger,* 767 F.2d 161 (5th Cir. 1985); and *Strachan v. City of Federal Heights,* 837 F.Supp. 1086 (D.Colo.1993). However, in each of these cases, save *Strachan,* the defendant officers were intimately involved in the actual use of deadly force— that is, they all fired at the suspect/plaintiff. In essence, the compelling factor in each of these cases was that the officers involved acted in concert in the specific act of seizing the suspect. Such is not the case here. Plaintiff was seized upon being shot. Officers Lujan, Lopez and Webb did not discharge their weapons. Instead, the plaintiff seeks to impose liability as to these defendants, as in *Strachan,* for causing or participating in an operation reasonably likely to result in the use of excessive force. *Strachan,* 837 F.Supp. at 1091.

■ The language of 42 U.S.C. § 1983 makes it clear that a defendant can be liable for "subject[ing], or *caus[ing] to be subjected,* any citizen ... to the deprivation of any rights, privileges, or immunities ...'" 42 U.S.C. § 1983 (1994) (emphasis added). *See also, Gutierrez–Rodriguez,* 882 F.2d at 560–61; *Strachan,* 837 F.Supp. at 1091. However, "[m]ere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983." *Sevier,* 60 F.3d at 699 n. 7 (citing *Daniels v. Williams,* 474 U.S. 327, 331–33, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986)). Plaintiff must demonstrate, at a minimum, that the non-shooting officers acted with reckless conduct. *Id.* at 699. Because I conclude that no factual disputes exist *regarding* whether the actions of Officers Lujan, Lopez, and Webb in the moments immediately before Officer Salazar fired on Mr. Diaz were reckless, I must grant their motion for summary judgment. There is simply no evidence in the record that Officers Lujan, Lopez and Webb made a

deliberate or reckless decision to escalate the confrontation with Mr. Diaz into a deadly encounter. The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983. *Wilson,* 52 F.3d at 1554 (citing *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)).

Because I have concluded Defendants Lujan, Lopez and Webb cannot be liable under Section 1983 for their, at worst, negligent conduct in creating an allegedly "dangerous situation" prior to Plaintiff's seizure in this case, I need not consider their qualified immunity defense. *Maldonado,* 975 F.2d at 729.

Accordingly, Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb must be granted, in part, and denied, in part.

## II. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF MUNICIPAL LIABILITY*

Defendant City of Santa Fe filed a motion for summary judgment on the issue of municipal liability contending that Plaintiff has no evidence to support his municipal liability claim. Plaintiff responds that his municipal liability claim centers on both deficient training and policy. In particular, Plaintiff claims Defendant City failed to provide either training or tools to its officers for the application of intermediate levels of force to resolve encounters between citizens and Santa Fe police officers.

■ The touchstone of a Section 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). Municipal liability may not be premised on employment of a tortfeasor with liability imposed under a

only when the plaintiff can show that the state actor participated in reckless or intentional injury-causing conduct that "shocks the conscience." *Uhlrig,* 64 F.3d at 572. The alleged improper

conduct of Officers Lujan, Lopez, and Webb fails to rise to this standard. *Collins v. Harker Heights Tex.,* 503 U.S. 115, 127, 112 S.Ct. 1061, 1069–1070, 117 L.Ed.2d 261 (1992).

respondeat superior theory. *Id.* at 691, 98 S.Ct. at 2036. Municipalities can be held liable only when an injury was inflicted by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694, 98 S.Ct. at 2037–2038; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121–22, 108 S.Ct. 915, 922–924, 99 L.Ed.2d 107 (1988) (plurality opinion) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–2038).

### A. *Inadequate Training*

 The Tenth Circuit has set out the elements necessary to establish that a municipality was deliberately indifferent to the adequacy of its training program. *Zuchel v. City and County of Denver, Colo.,* 997 F.2d 730, 734–735 (10th Cir.1993). The plaintiff must show (1) a constitutional deprivation, (2) that the activity which caused the deprivation is a usual and recurring practice, (3) there is a causal connection between the failure to train and the constitutional deprivation, and (4) deliberate indifference on the part of the municipality in failing to train its officers. *Id.*

 In this case, as I stated earlier, genuine factual issues exist surrounding whether Officer Salazar employed excessive force in seizing the plaintiff, thereby depriving Plaintiff of constitutional rights. In addition, it is clear to me that the practice of dealing with drunken, rude, and potentially violent suspects is "usual and recurring." Further, I conclude there is a genuine issue of material fact regarding the existence of a causal connection between the failure to train Officer Salazar and the other officers[7] at the scene

in this case regarding the methodology for handling suspects such as Mr. Diaz and the constitutional deprivation allegedly suffered by the plaintiff. Plaintiff's expert, Lou Reiter, opines that these officers completely mishandled the situation they faced on May 31, 1992, by employing improper police tactics that effectively escalated the potential danger to themselves and to Plaintiff. In particular, Mr. Reiter cites the failure of these officers to maintain a proper distance between themselves and the suspect, the failure of the officers to carry their PR–24 nightsticks with them, the failure of the officers to de-escalate the situation by having all officers direct their firearms and simultaneously shout commands at the suspect. Plaintiff argues that Mr. Reiter's expert testimony will establish the appropriate and accepted method for reasonably trained officers to handle situations such as the one faced by these officers. The above evidence, coupled with the fact that at least four officers from the Santa Fe Police Department allegedly violated such widely recognized methodologies in this case, creates a logical inference that Defendant City's training in this area was inadequate, thereby permitting Plaintiff to take this issue to the jury.[8]

 The final factor Plaintiff must establish under Zuchel is that the City was deliberately indifferent in its failure to train. A municipality is deliberately indifferent if "(1) its training program is inadequate, and (2) the city deliberately or recklessly made the choice to ignore its deficiencies." *Zuchel,* 997 F.2d at 740 n. 5. The *Zuchel* opinion quotes the Supreme Court's discussion of deliberate indifference in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), which helps define delib-

---

7. Although I have concluded that these other officers are not individually liable under Section 1983 for causing the constitutional deprivation alleged by Plaintiff, because their acts were, at worst, negligent, I conclude their actions are relevant within the context of a municipal liability claim for inadequate training. Their actions directly reflect upon the adequacy of the training received by members of the Santa Fe Police Department in the same manner that unrelated, but factually similar instances of potentially excessive force by other officers impacted the court's decision in *Zuchel. See Zuchel,* 997 F.2d at 737–41.

8. Plaintiff's counsel alleges in their brief that the plaintiff will also show that Defendant City had a similar situation involving the alleged use of excessive force against another Santa Fe citizen, Mr. Pancho Ortega, following the May 31, 1992, incident in this case. Plaintiff further alleges that following this second incident, Defendant City revised its training program. However, counsel for Plaintiff fails to cite to any facts in support of these allegations, and I have, consequently, not considered them in my analysis.

erate indifference within the context of municipal liability on the basis of inadequate training:

> As Justice Brennan's opinion in *Pembaur v. Cincinnati*, 475 U.S. 469, 483–484 [106 S.Ct. 1292, 1299–1301, 89 L.Ed.2d 452] (1986) (citations omitted) put it: '[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policy makers. Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983....
>
> The issue in a case like this one ... is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to present 'city policy.' It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need.

In this case, Plaintiff presents only indirect evidence of the allegedly inadequate training of these officers. Plaintiff points to the conduct of the four officers at the incident involved in this case; the opinion of their expert, Mr. Reiter, that the officers completely mishandled the incident, violated basic training precepts and were not properly reprimanded by their supervisors following the incident; and, the deposition testimony of Officer Salazar that he could not recall training related to effective methods for dealing with armed suspects like Mr. Diaz. However, the Supreme Court has cautioned that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985) (opinion of Rehnquist, J.). Furthermore, the Tenth Circuit has concluded that the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability under *Monell. Butler v. City of Norman,* 992 F.2d 1053, 1055–56 (10th Cir.1993) (citing, *Santiago v. Fenton,* 891 F.2d 373, 382 (1st Cir. 1989)).

I conclude the facts in this case are distinguishable from those faced by the court in *Tuttle,* and that the jury can permissibly infer the existence of a policy or custom, attributable to Defendant City, of inadequately training its officers in how to appropriately deal with situations such as the one confronting the officers in this case. In *Tuttle,* the Court examined jury instructions which permitted the jury to hold a municipality liable for a single police officer's alleged use of excessive force. The Court would not permit a jury to infer "policy or custom" from the isolated actions of one officer as that would be tantamount to permitting liability based on respondeat superior. However, I am presented with a much different situation in this case. Taking the facts as alleged by Plaintiff, not one, but four incidents of improper police conduct, in violation of accepted standards of police training, occurred in this case. Had Officer Salazar alone violated such accepted standards, I would have no problem granting Defendant City's motion for summary judgment on the theory of inadequate training pursuant to *Tuttle.* The fact that four officers simultaneously violated these standards [9] raises a genuine issue of material fact regarding the adequacy of Defendant City's training program, thereby prohibiting summary judgment against Plaintiff on this theory of municipal liability.

---

9. Particularly in light of the fact that they allegedly acted in concert without the benefit of any coordination or communication between them.

## B. *Inadequate Tools*

Plaintiff also alleges the excessive force employed by Officer Salazar in effecting his seizure was a direct result of the policies of the City of Santa Fe in failing to provide their officers with appropriate tools for the application of intermediate levels of force in situations calling for such a measured response. Plaintiff presents evidence that demonstrates Defendant City decided to discontinue the use of mace by its officers as a means of subduing a suspect and then failed to provide its officers with any intermediate force alternative. In addition, Plaintiff's evidence indicates Defendant City did not require its officers to carry their PR–24 nightsticks with them upon exiting their patrol cars. Plaintiff's expert testified in deposition that the combination of such policies was unreasonable. First, Mr. Reiter testified it was unreasonable for the officers to have only PR–24s and their guns as the weapons available to them for resolving confrontations with citizens. Mr. Reiter stated that, at a minimum, the officers should have been provided with some other less-than-lethal alternative, such as a chemical agent, an electronic restraint, or an impact/shock type of device. Secondly, Mr. Reiter stated that the city's failure to provide its officers with some other less-than-lethal alternative, combined with the fact that the city failed to mandate that the officers carry the baton when called to a scene was particularly unreasonable.

 I agree with Defendant City that police are not constitutionally required to carry certain weapons, such as mace, nor are they constitutionally required to respond to a suspect's threat of deadly force with nondeadly force or the least intrusive amount of force. However, that is not the situation presented in the facts of this case. Plaintiff does not argue that Defendant City's officers are required to carry mace. Similarly, Plaintiff does not argue that Defendant City's officers cannot respond to a suspect's use of deadly force against them with deadly force. I conclude that the evidence identified by Plaintiff in his response to Defendant City's motion for summary judgment demonstrates that genuine issues of material fact exist and that Defendant City's motion for summary judgment on this issue must be denied.

Accordingly, Defendants' Motion for Summary Judgment on Municipal Liability should be denied.

## III. *PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS*

Plaintiff seeks summary judgment on the counterclaims filed by Officers Lujan, Lopez, Salazar, and Webb. These counterclaims are pendent state tort claims which are governed by New Mexico law. The counterclaims are premised on the psychic injuries allegedly sustained by the officers as a result of the alleged assaults by Mr. Diaz and their observations of Plaintiff being shot by Officer Salazar. Plaintiff asks that I dismiss these claims as barred under New Mexico's "fireman's rule." See *Moreno v. Marris*, 102 N.M. 373, 695 P.2d 1322 (Ct.App.1984), *cert. quashed sub. nom., Corral, Inc. v. Marrs,* 102 N.M. 412, 696 P.2d 1005 (1985).

 I decline to interpret the "fireman's rule" as broadly as Plaintiff requests, nor do I accept Plaintiff's invitation to extend the application of the "fireman's rule" beyond the narrow confines currently ascribed to it by the courts of New Mexico. I do not read the fireman's rule, as interpreted and applied by the New Mexico state courts, as applying to police officers or as being applicable in the context of intentional torts.

Consequently, I must deny Plaintiff's Motion for Summary Judgment on the Counterclaims.

Defendants' Motion to Bifurcate and Motion to Bifurcate II will both be addressed at the time of the pretrial conference in this matter.

An order in accordance with this memorandum opinion shall be entered.

### *ORDER*

**THIS MATTER** is before the Court on Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb (Docket No. 126); Defen-

dant Salazar's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendant Ignacio Salazar (Docket No. 128); Defendant City of Santa Fe's Motion for Summary Judgment on the Issue of Municipal Liability (Docket No. 124); and Plaintiff's Motion for Summary Judgment on the Counterclaims (Docket No. 143). A memorandum opinion was entered on this date. For the reasons set forth therein, the Court finds that Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb will be GRANTED, in part, and DENIED, in part; Defendant Salazar's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendant Ignacio Salazar is not well taken and will be DENIED; Defendant City of Santa Fe's Motion for Summary Judgment on the Issue of Municipal Liability is not well taken and will be DENIED; and Plaintiff's Motion for Summary Judgment on the Counterclaims is not well taken and will be DENIED.

**IT IS, THEREFORE, ORDERED** that Defendants Lujan, Lopez, and Webb's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendants Lujan, Lopez, and Webb **IS GRANTED,** in part, and **DENIED,** in part.

**IT IS FURTHER ORDERED** that Defendant Salazar's Motion for Summary Judgment Regarding Plaintiff's Claims Against Defendant Ignacio Salazar **IS DENIED.**

**IT IS FURTHER ORDERED** that Defendant City of Santa Fe's Motion for Summary Judgment on the Issue of Municipal Liability **IS DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment on the Counterclaims **IS DENIED.**