Willie **SEVIER, Individually, as parent and heir at law of Gregory Sevier, Deceased, and as administrator of the estate of Gregory Sevier; Orene Sevier, Individually, and as parent and heir at law of Gregory Sevier, Deceased, Plaintiffs–Appellees,**

v.

**CITY OF LAWRENCE, KANSAS; Ted J. Bordman; James H. Phillips; and W. Ronald Olin, Defendants–Appellants,**

and

**George T. Wheeler, Defendant.**

No. 94–3214.

United States Court of Appeals, Tenth Circuit.

July 21, 1995.

---

Thomas E. Wright of Wright, Henson, Somers, Sebelius, Clark, & Baker, LLP, Topeka, KS (Catherine A. Walter of Wright, Henson, Somers, Sebelius, Clark, & Baker, LLP, and Lance W. Burr, Lawrence, KS, with him on the brief), for plaintiffs-appellees.

Gerald L. Cooley of Allen, Cooley & Allen, Lawrence, KS (Randall F. Larkin, of Allen, Cooley & Allen, with him on the briefs), for defendants-appellants.

Before MOORE and EBEL, Circuit Judges, and COOK,* District Judge.

EBEL, Circuit Judge.

Plaintiffs–Appellees, Willie and Orene Sevier (respectively "Willie" and "Orene;" collectively "the Seviers"), brought this action under 42 U.S.C. § 1983 and Kansas state law

---

* The Honorable H. Dale Cook, Senior District Judge, United States District Court for the North- ern District of Oklahoma, sitting by designation.

against various police officers and the City of Lawrence, Kansas [1] for the shooting death of their son Gregory Sevier ("Gregory"). Lawrence police officers Ted J. Bordman ("Bordman") and James H. Phillips ("Phillips") shot and killed Gregory when a confrontation developed in the course of their response to a 911 emergency call placed by the Seviers. The district court denied Defendants' motion for summary judgment on the Seviers' § 1983 excessive force claim, finding that disputed issues of material fact precluded Defendants from obtaining summary judgment on their claim of qualified immunity. The court further denied summary judgment on the Seviers' state law claim for the tort of outrage. Defendants now appeal. We hold, pursuant to the recent Supreme Court case of *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), that we lack jurisdiction to review the district court's ruling that disputed material facts preclude summary judgment for Defendants on the Seviers' § 1983 claim. We also hold that we lack jurisdiction to consider Defendants' interlocutory appeal from the denial of summary judgment on the Seviers' state law claim of outrage.

## I. BACKGROUND

Between 11 p.m. and midnight on the evening of April 20, 1991, Willie and Gregory Sevier went to shoot pool at the West Coast Saloon in Lawrence. On their way to the pool hall, Gregory told his father that he was having problems with his girlfriend. The two drank a modest amount of beer at the saloon and then returned home, where Gregory went to his room with a six-pack of beer and began to play his stereo at a very high volume. Willie went to Gregory's bedroom to ask him to turn down the stereo, but the door was locked and Gregory did not respond to Willie's knocking. Willie then retrieved a plastic toothpick from the kitchen to unlock the door. When he opened the door, he saw that Gregory was sitting on the edge of his bed with a knife in his hand resting on his lap. Willie closed the door without speaking to his son and discussed the situation with his wife Orene.

The Seviers were particularly concerned because Gregory had attempted suicide on two previous occasions, and they decided to call 911 for assistance. Orene placed the call at 2:27:50 a.m. on the early morning of April 21, 1991, and engaged in the following conversation with the emergency dispatcher:

> ... My son is in his bedroom and he's having a real problem, and my husband seen him with a butcher knife in there and I just want someone to go in and check him out.
>
> Okay, is your husband there now?
>
> Yeah, he's just standing outside waiting.
>
> .    .    .    .    .
>
> And don't use the siren or anything. I don't want to alarm him or anything like that. I just want to come out here and—
>
> Okay, have you been arguing tonight?
>
> No, no, no, nothing's going on.
>
> Okay, why does he have the knife, do you know?
>
> I think he's having a problem with his girlfriend or something, I think they broke up or something, I don't know.
>
> All right, I'll send someone out.
>
> Thank you.

*Sevier*, 853 F.Supp. at 1364.[2] Following Orene's call, Officers Bordman, Phillips, and George T. Wheeler ("Wheeler") were dispatched to the Sevier home. The dispatch stated:

> ... the mother advising her 22 year old son is in his bedroom. He has a butcher knife. It's unknown exactly what the problem is. She believes he may be having trouble with his girlfriend, there has been no arguing at the residence. She'd like an officer en route to talk to him.

1. The claims implicated in the present appeal primarily relate to Defendants–Appellants Ted J. Bordman ("Bordman") and James H. Phillips ("Phillips"). Accordingly, when we refer to "Defendants" in the context of this appeal, we intend to identify Bordman and Phillips.

2. The record before us on appeal does not include a transcript of the 911 call. However, the parties do not dispute the district court's quotation of the call.

*Id.*[3] Officers Bordman and Wheeler later stated that they did not believe the dispatch to be a suicide call. Nevertheless, Bordman explained that he understood that someone was upset about his girlfriend and "needed somebody to talk to." Officer Phillips stated that he could not remember whether he understood the call to involve a suicide, and highlights that he even stopped to issue a traffic citation on his way to the Seviers' home. The Seviers assert that Phillips stated that he recognized the call as involving a possible "signal 4" subject or suicide.

Bordman arrived at the Sevier home first at 2:34:57 a.m. There is some dispute as to whether Bordman stopped to talk with Willie and Orene or ignored their attempts to discuss the situation. In any event, Willie directed Bordman to Gregory's bedroom and told him that Gregory was in the room with a knife. After Bordman found the door locked and heard loud music coming from inside, Willie showed Bordman how to unlock the door with a toothpick. Bordman first requested that the police radio airwaves be cleared except for emergency traffic, and then unlocked the bedroom door and opened it approximately four to six inches. Due to the loud music, Bordman remained unable to communicate with Gregory, although Gregory stated that "I didn't do anything."

Shortly after Bordman opened the door, Phillips arrived on the scene at 2:36:33 a.m. Bordman warned Phillips that he thought the person in the bedroom had a knife, and both officers drew their weapons. Bordman then looked into the bedroom but could only see the left half of Gregory's body. Bordman ordered Gregory to show his hands, while Phillips retreated down the hallway away from Gregory's room. Gregory then emerged from his bedroom and stood in the doorway with the knife in his right hand. In response, Bordman moved backwards into the bedroom directly across from where Gregory was standing.

Bordman and Phillips both repeatedly ordered Gregory to drop the knife. Bordman also told Gregory that they were not going to hurt him. Gregory remained in his bedroom doorway, standing at a forty-five degree angle to Bordman in the bedroom across the hallway and Phillips down the hallway to the right.[4] Officer Wheeler then arrived on the scene and took a position behind Phillips. Orene and Willie stood behind Phillips and Wheeler further down the hallway.

Gregory then cried "I love you, Mom. I love you, Mom." Orene responded, "I love you, Gregg." According to the three officers, Gregory next turned to his left and lunged at Bordman with the knife in a raised and striking position. The Seviers dispute that Gregory lunged at an officer and maintain that he was standing with the knife at his side. Nevertheless, Bordman and Phillips both fired at Gregory, striking him six times. Gregory fell forward into the bedroom occupied by Phillips. Wheeler radioed for an ambulance, explaining that shots had been fired and that a man was down. Bordman and Phillips attended to Gregory, but, according to the later testimony of an expert, two of the shots had been instantly fatal and killed Gregory. Less than five minutes had elapsed since Bordman's arrival at the Sevier home in response to the 911 call.

Following Gregory's death, the Seviers filed suit against Bordman, Phillips, and Wheeler, as well as Chief of Police W. Ronald Olin ("Olin") and the City of Lawrence, asserting claims under 42 U.S.C. § 1983 and Kansas tort law. The Seviers alleged three causes of action under § 1983 on behalf of themselves and Gregory claiming individual and municipal liability based on (1) Bordman and Phillips' use of excessive force; (2) Lawrence's failure to provide adequate training to its police officers; and (3) Lawrence's differential treatment of 911 emergency calls placed by Native Americans like the Seviers. They also alleged state law causes of action for (1) wrongful death; and (2) the tort of outrage. Defendants moved for summary judgment, and the district court granted Defendants' motion as to all defendants on the

---

**3.** As with the 911 call, the record before us on appeal does not include a transcript of the police dispatch. However, the parties do not dispute the district court's quotation of the dispatch.

**4.** The hallway was four-feet wide at the point between the two bedrooms and three-feet wide elsewhere.

Seviers' equal protection claim, *Sevier v. City of Lawrence*, 853 F.Supp. 1360, 1368 (D.Kan. 1994), failure to train claim, *id.* at 1369–70, and state wrongful death claim to the extent it was premised on a negligence theory, *id.* at 1370.[5] The court also granted summary judgment for Lawrence and Chief Olin on the constitutional excessive force claim, concluding that there were no grounds to establish municipal liability. *Id.* at 1369.[6]

However, the district court denied Defendants' motion for summary judgment as to Bordman and Phillips on the Seviers' § 1983 excessive force claim, ruling that genuine issues of material fact precluded granting summary judgment based on the two officers' claim of qualified immunity. *Id.* at 1368. The court also denied summary judgment on the state tort of outrage claim. *Id.* at 1370. Defendants now appeal the court's partial denial of their motion for summary judgment as to those two claims.

## II. DISCUSSION

### A. *Excessive Force Claim*

■■■ Defendants' use of deadly force was justified under the Fourth Amendment if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865,

1871–72, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985); *see also Wilson v. Meeks*, 52 F.3d 1547, 1552–53 (10th Cir.1995) (noting that the application of the reasonableness standard to § 1983 excessive force cases is clearly established). We pay "careful attention to the facts and circumstances of [the] particular case," *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872, and ask whether the "totality of the circumstances" justified the use of force, *Garner*, 471 U.S. at 8–9, 105 S.Ct. at 1699–1700. The reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct[7] during the seizure unreasonably created the need to use such force. *See Bella v. Chamberlain*, 24 F.3d 1251, 1256 & n. 7 (10th Cir.1994) ("Obviously, events immediately connected with the actual seizure are taken into account in determining whether the seizure is reasonable.") (following *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871, and *Garner*, 471 U.S. at 8, 105 S.Ct. at 1699–1700), *cert. denied*, —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *see also Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir.1993) (same); *Yates*, 941 F.2d at 447 (same); *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1501 (11th Cir.1995) (en banc) (same), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).[8]

5. Defendants conceded that they could be liable on the Seviers' state wrongful death claim under the Kansas Tort Claims Act, Kan.Stat.Ann. § 75–6101 *et seq.*, to the extent that their use of force was excessive. *Sevier*, 853 F.Supp. at 1370. Therefore, because the district court denied summary judgment on the Seviers' constitutional excessive force claim, as explained in the text, their state wrongful death claim remained valid as premised on the use of excessive force.

6. In addition, the court granted summary judgment for Wheeler, because the Seviers dismissed their claims against him. *Sevier*, 853 F.Supp. at 1362 n. 4, 1370. Accordingly, Wheeler is not a party to this appeal.

7. Mere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 331–33, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986) (stating that "injuries inflicted by governmental negligence are not addressed by the Unit-

ed States Constitution" and rejecting § 1983 claim based on alleged due process violation); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir.1991) (holding that "mere negligence may not serve as a basis for a section 1983 claim," but concluding that officer's actions causing need to use deadly force were "more than merely negligent").

8. Of course, if the preceding events are merely negligent or if they are attenuated by time or intervening events, then they are not to be considered in an excessive force case. *See Romero v. Board of County Comm'rs*, 60 F.3d 702, 704–05 (10th Cir.1995) (citing *Bella* and explaining that the failure to handcuff a defendant when the officer had no reason to expect the defendant would become violent did not cause the subsequent shooting of the defendant in a violent confrontation to become unreasonable); *Wilson*, 52 F.3d at 1554 (rejecting plaintiffs' claim that officer's command to victim to show his hand caused subsequent confrontation); *Bella*, 24 F.3d

In the instant action, the Seviers allege that Defendants violated Gregory's right to be free from the use of excessive force in two ways. First, they argue that the act of shooting Gregory was an excessive response to the situation as encountered by the officers when they confronted Gregory in the Seviers' hallway. Second, they argue that Defendants acted recklessly and unreasonably in the events surrounding the seizure and that this conduct immediately led to the shooting. The district court ruled that genuine issues of material fact precluded granting summary judgment for Defendants on the excessive force claim. *Sevier*, 853 F.Supp. at 1368. Defendants do not challenge the legal standard used by the district court, but they do, by this interlocutory appeal, challenge the ruling that there exist genuine disputes of fact regarding the reasonableness of their use of force. We lack jurisdiction to consider such a collateral appeal under *Johnson v. Jones*, which held that appellate courts lack interlocutory jurisdiction to review a district court ruling denying summary judgment for a defendant on a qualified immunity defense on the ground that there are disputed issues of material fact. —— U.S. at ——, 115 S.Ct. at 2156.

Individual defendants like Bordman and Phillips may interlocutorily appeal the denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985). However, *Johnson* provides that the scope of such appeals is limited to "purely legal" challenges to the district court's ruling on whether a plaintiff's legal rights were clearly established, and cannot include attacks on the court's "evidence sufficiency" determinations about whether there are genuine disputes of fact. *Johnson*, —— U.S. at ——, 115 S.Ct. at 2156. That is, we can only review whether the district court "mistakenly identified clearly established law ... given [ ] the facts that the district court assumed when it denied summary judgment for that (purely legal) reason." *Id.* at ——, 115 S.Ct. at 2159.

In *Johnson*, the Supreme Court explicitly overruled our previous decisions holding that

public officials could collaterally appeal district court rulings denying qualified immunity because of a finding of disputed material facts. *See, e.g., Austin v. Hamilton*, 945 F.2d 1155, 1157, 1162–63 (10th Cir.1991). The Supreme Court distinguished purely legal questions, which are easier to analyze separately from the underlying merits, from claims that implicate factual issues. *Johnson*, —— U.S. at ——, 115 S.Ct. at 2157. The Court further observed that limiting collateral review to legal issues reduces the risk of delaying litigation and expending appellate resources on factual inquiries better suited to trial court expertise. *Id.* at ——, 115 S.Ct. at 2158. Finally, the Court noted that narrowing the exceptional circumstances under which interlocutory appeals may be heard preserves the legislative command of 28 U.S.C. § 1291 that appellate courts only have jurisdiction over final decisions. *Id.* at ——, 115 S.Ct. at 2154. Although prohibiting public officials from immediately appealing the denial of qualified immunity on factual grounds might expose them to trials from which they should be shielded if genuine issues of fact do not truly exist, that risk is outweighed by the countervailing values of limiting collateral appeals. *Id.* at ——, 115 S.Ct. at 2158.

Accordingly, in the instant case, we lack jurisdiction to consider Defendants' collateral appeal because they seek review of the district court's ruling that summary judgment was inappropriate because the Seviers raised genuine disputes of fact. Although the district court did not clearly identify those facts upon which it relied to find a genuine dispute of fact, *Johnson* instructs us to "undertake ... a review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Id.* at ——, 115 S.Ct. at 2159. In reviewing the record before us, we conclude that the district court likely based its ruling on the finding that some evidence showed that Gregory did not lunge at Bordman with a knife, and, thus, that highly material fact is

at 1256 (shots fired at a fleeing helicopter one hour before the seizure and before an interven-

ing chase were simply too remote to be consid-

in dispute.[9] The court also may have based its denial of summary judgment on the finding that there was conflicting evidence as to whether the officers precipitated the use of deadly force by their own actions during the course of the encounter immediately prior to the shooting.[10] In either event, we remain without jurisdiction to review the court's finding that there existed genuine issues of disputed facts that precluded the entry of summary judgment.

### B. State Law Claims

■ As to the Seviers' state law claim for the tort of outrage, Defendants request that we consider their appeal of the district court's denial of summary judgment under the discretionary doctrine of pendent appellate jurisdiction. However, the recent Supreme Court case of *Swint v. Chambers County Comm'n*, — U.S. —, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), forecloses our ability to exercise such jurisdiction in the present appeal. Prior to *Swint*, we exercised jurisdiction over otherwise nonfinal and nonappealable lower court decisions that were closely related to pendent appealable decisions. *See, e.g., Primas v. City of Oklahoma City*, 958 F.2d 1506, 1512 (10th Cir.1992). However, in *Swint*, the Supreme Court held that interlocutory appeals should ordinarily be limited to those expressly provided for by Congress, including (1) under 28 U.S.C. § 1292(b) where a district court certifies an issue for immediate appeal; and (2) pursuant to rules created by the Supreme Court according to its authority from the Rules Enabling Act, codified at 28 U.S.C. §§ 2071–2077. — U.S. at —, 115 S.Ct. at 1209–11.

The *Swint* Court left open the possibility that pendent appellate jurisdiction might still be appropriate in those limited situations where an otherwise nonappealable decision is "inextricably intertwined" with the appealable decision, or where review of the nonappealable decision is "necessary to ensure meaningful review" of the appealable one. *Id.* at —, 115 S.Ct. at 1212. Subsequent to *Swint*, in *Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir.1995), we exercised pendent appellate jurisdiction to affirm summary judgment on otherwise nonappealable federal and state claims because the pendent issues related to those raised by the proper appeal of the denial of qualified immunity. There, we held that because our ruling on qualified immunity fully disposed of the pendent claims as well, the pendent claims were coterminous with, or subsumed in, the claim on interlocutory appeal, and, therefore, were inextricably intertwined with the qualified immunity appeal so as to fall within one of the narrow exceptions left open by *Swint*. *See id.*, 57 F.3d at 930.

However, such a situation does not exist in the present action. As a starting matter, given our holding that we lack jurisdiction over Defendants' appeal of the district court's ruling on qualified immunity, no permissible appeal exists upon which to exercise pendent jurisdiction. Moreover, even if we considered Defendants' appeal on the § 1983 excessive force claim, it is unlikely that the issues presented would be coterminous with those raised by the state law outrage claim, notwithstanding Defendants' assertion that the Seviers' state law claims "rise and fall with Bordman's and Phillips' claims of qualified immunity," Appellant Rep.Br. at 8.

### III. CONCLUSION

We have an independent duty to inquire into our own jurisdiction, whether or not the issue is raised by the parties. In fulfilling that duty, we DISMISS for lack of jurisdiction Defendants' appeal of the district court's denial of summary judgment on both the

---

ered in evaluating whether the subsequent seizure was reasonable).

9. For example, the record reveals that the Seviers' expert testified based on the forensics evidence that Gregory either (1) stood in the hallway at a 45–degree angle to Bordman and Phillips; or (2) stood at a 45–degree angle to the officers, was hit by Phillips, and then pivoted toward Bordman in the adjacent bedroom. Neither scenario seems consistent with Defendants' depiction of Gregory lunging at Bordman before he was shot.

10. For example, the record reveals some evidence upon which a jury could conclude that Defendants acted recklessly by confronting Gregory in the manner that they did after knowing that he was armed and distraught over problems he was having with his girlfriend, and without gathering more information on the situation.

Seviers' state outrage claim and § 1983 excessive force claim.