**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARILYN ALLEN, Personal
Representative of Terry Allen, deceased,

     Plaintiff - Appellant,

vs.

MUSKOGEE, OKLAHOMA, a municipal
corporation; DON SMITH, BENTLEY
McDONALD, BRIAN FARMER, and
JAMES CRULL,

     Defendants - Appellees.

No. 96-7021

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-95-321-S)

Juliet N. Brennan and Albert R. Matthews, Appearing for Appellant, of Bonds, Matthews, Bonds & Hayes, Muskogee, Oklahoma, for Plaintiff-Appellant.

Woodrow K. Glass, Appearing for Appellee (Reggie N. Whitten, with him on the brief), Mills & Whitten, Oklahoma City, Oklahoma, Jim T. Priest, David Walls, and Cathy A. Warden, of McKinney, Stringer & Webster, P.C., Oklahoma City, Oklahoma; for Defendants-Appellees.

Before KELLY, BRISCOE, and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

Plaintiff-Appellant Marilyn Allen appeals from an adverse ruling on her civil rights claim under 42 U.S.C. § 1983 as personal representative, alleging that the defendants used excessive force against her deceased husband in violation of the Fourth Amendment. The district court granted summary judgment to the individual Defendant-Appellee police officers on the ground that they did not violate the Fourth Amendment. Having determined that no constitutional violation occurred, the court also granted summary judgment to Defendant-Appellee City of Muskogee. Our jurisdiction arises under 28 U.S.C. § 1291. A unanimous panel reverses the judgment as to the individual officers, and a divided panel reverses as to the city.

Background

On the morning of February 20, 1994, Terry Allen left his home after an altercation with his wife and children. He took ammunition and several guns with him, and later parked in front of the Muskogee residence of his sister, Rhonda Lee-Oakley. The altercation was reported to the Wagoner County Sheriff's Department, which sent a teletype to the Muskogee Police Department (MPD), describing Mr. Allen and his car and advising that Mr. Allen was armed and had threatened family members. The teletype also advised that there was a 1983 warrant outstanding for Mr. Allen's arrest for impersonating an officer. Lt. Donald Smith of the MPD relayed the information to other officers during a squad meeting at 1:30 p.m.

2

Some time after the meeting, Lt. Smith was advised that Mr. Allen might be at his sister's house in Muskogee. Before he could meet with other officers, a radio dispatcher advised him that a 911 call had been made from Ms. Oakley's home and that Mr. Allen was threatening suicide. Lt. Smith proceeded to the Oakley home, approached the bystanders who were standing near Mr. Allen's vehicle, and ordered them to step back, which they did. Mr. Allen was sitting in the driver's seat with one foot out of the vehicle. He had a gun in his right hand, which was resting on the console between the seats.

As Lt. Smith repeatedly told Mr. Allen to drop his gun, Officer Bentley McDonald arrived and joined Lt. Smith at the driver's side door. Lt. Smith then reached into the vehicle and attempted to seize Mr. Allen's gun, while Officer Bentley held Mr. Allen's left arm. Officer Bryan Farmer, who arrived with Officer Bentley, approached Mr. Allen's car from the passenger side, and attempted to open a passenger side door. Mr. Allen reacted by pointing the gun toward Officer Farmer, who ducked and moved behind the car. Mr. Allen then swung the gun toward Lt. Smith and Officer McDonald, and shots were exchanged. Lt. Smith and Officer McDonald fired a total of twelve rounds into the vehicle, striking Mr. Allen four times. The entire sequence, from the time Lt. Smith arrived to the time Mr. Allen was killed, lasted approximately ninety seconds.

Plaintiff brought this § 1983 claim against the officers involved and against the City of Muskogee. Defendants subsequently moved for summary judgment, and set forth a statement of facts in their brief supporting the motion. In her response, Plaintiff did not

3

dispute Defendants' statement of facts. The district court granted Defendants' motion, holding that there was no genuine issue of material fact and that Defendants were entitled to judgment as a matter of law.

Discussion

We review the grant of summary judgment de novo, and apply the same legal standard used by the district court under Rule 56(c). Goldsmith v. Learjet, Inc., 90 F.3d 1490, 1493 (10th Cir. 1996). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and the dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We construe the factual record and reasonable inferences therefrom in the light most favorable to the nonmovant. Gullickson v. Southwest Airlines Pilots' Assoc., 87 F.3d 1176, 1183 (10th Cir. 1996).

The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Instead, the movant only bears the initial burden of "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In granting summary judgment, the district court went beyond the agreed-upon facts and made its own findings. The court found, for example, that the officers knew that Mr. Allen had claimed to have killed three people before arriving at his sister's home. Whether the officers knew does not alter our review, but Plaintiff is correct in pointing out that the court's finding is not supported by the record.

Although the Supreme Court has said that findings of fact are sometimes helpful to an appeals court on summary judgment review, Anderson, 477 U.S. at 250 n.6, the district court on summary judgment should determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact," id. at 250. In this sense, traditional "findings of fact" are inappropriate in a summary judgment order, because if summary judgment is proper no findings of fact need be made and the case can be resolved as a matter of law. We read Anderson to mean only that it may be helpful when the district court summarizes undisputed facts. See Regalado v. City of Commerce City, 20 F.3d 1104, 1108 n.1 (10th Cir. 1994) (findings of fact are not required, but the reasons for granting summary judgment should be stated in the record).

## I. The Individual Officers

We analyze a § 1983 claim of excessive force by determining whether the officers' actions were objectively reasonable in light of the surrounding facts and circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989); Thompson v. City of Lawrence, Kan., 58

5

F.3d 1511, 1516 (10th Cir. 1995). The district court found no genuine issues of material fact, and held that the officers acted in an objectively reasonable way. We conclude, however, that the individual Defendants failed to carry their initial burden of demonstrating the absence of a genuine issue of material fact.

The excessive force inquiry includes not only the officers' actions at the moment that the threat was presented, but also may include their actions in the moments leading up to the suspect's threat of force. Sevier v. City of Lawrence, Kan., 60 F.3d 695, 699 (10th Cir. 1995). Of course, the use of force must be judged from the perspective of a reasonable officer "on the scene," who is "often forced to make split-second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. However, as we stated in Sevier: "[t]he reasonableness of Defendants' actions depends both on whether the officers were in danger at the precise moment that they used force and on whether Defendants' own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." 60 F.3d at 699. We will thus consider an officer's conduct prior to the suspect's threat of force if the conduct is "immediately connected" to the suspect's threat of force. Romero v. Board of County Comm'rs, 60 F.3d 702, 705 n.5 (10th Cir. 1995), cert. denied, 116 S. Ct. 776 (1996); Bella v. Chamberlain, 24 F.3d 1251, 1256 n.7 (10th Cir. 1994), cert. denied, 115 S. Ct. 898 (1995); see also Tennessee v. Garner, 471 U.S. 1, 8-9 (1985) (objective

reasonableness inquiry requires courts to examine "whether the totality of the circumstances justified a particular sort of search or seizure").

The Defendants have not shown that there is a lack of a genuine issue of material fact with regard to the officers' reasonableness. See Celotex, 477 U.S. at 325. Indeed, it seems to us that Defendants have pointed out the presence of a genuine issue. Defendants acknowledged before the district court that there are differences among the eyewitness depositions. For example, some deposition testimony indicates that Lt. Smith ran "screaming" up to Mr. Allen's car and immediately began shouting at Mr. Allen to get out of his car; other testimony indicates that Lt. Smith approached cautiously, and tried talking Mr. Allen into giving up the gun.

Appellees label these disputes as "minor," but the substantive law indicates otherwise. See Romero, 60 F.3d at 705 n.5 (an officer's conduct prior to the suspect's threat of force is relevant if the conduct is "immediately connected" to the suspect's threat of force). The entire incident, from the time Lt. Smith arrived to the time of the shooting, took only ninety seconds. Clearly, the officers' preceding actions were so "immediately connected" to Mr. Allen's threat of force that they should be included in the reasonableness inquiry. The differences in eyewitness testimony regarding the officers' approach are therefore material factual disputes. Anderson, 477 U.S. at 248 (holding that the substantive law determines whether a disputed fact is material).

The disputes are not only material, but they are also genuine. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. While we express no opinion on the merits, a reasonable jury could conclude on the basis of some of the testimony presented that the officers' actions were reckless and precipitated the need to use deadly force. See Sevier, 60 F.3d at 699.

BRISCOE, Circuit Judge.

## II. The City of Muskogee

The plaintiff also claimed the City of Muskogee was liable under 42 U.S.C. § 1983 for inadequate training of the individually-sued police officers. After the district court determined the individual officers committed no constitutional violation, the court granted summary judgment to the City, reasoning that municipal liability requires a constitutional violation by the officers. Even assuming the court correctly interpreted that law of municipal liability, a question we need not and do not resolve, the court erred in entering summary judgment on that ground because we have concluded plaintiff presented sufficient evidence that the officers committed a constitutional violation to withstand a summary judgment motion. We review the propriety of summary judgment for the City de novo and find sufficient support for plaintiff's claim against the City to withstand summary judgment.

8

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

"[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training. Zuchel v. City and County of Denver, 997 F.2d 730, 734-35 (10th Cir. 1993). See Canton, 489 U.S. at 389-91. As regards the second and third requirements, a showing of specific incidents

9

which establish a pattern of constitutional violations is not necessary to put the City on notice that its training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability. See Board of County Com'rs v. Brown, 117 S. Ct. 1382 (1997); Canton, 489 U.S. at 390 n.10.

The first requirement is satisfied here because, as concluded in Section I of this opinion, there was evidence in the record to support the claim that the officers exceeded constitutional limitations on the use of force. As regards the second requirement, exhibits presented to the district court contained evidence that it was common for officers to have to deal with mentally ill or emotionally disturbed people and people under the influence of drugs or alcohol. Nor is it uncommon for officers to have to deal with persons armed with deadly weapons. Thus, there was evidence that the use of force arose under circumstances that constituted a usual and recurring situation with which police officers must deal.

The third requirement is also satisfied. The record supports an inference that the training demonstrates a deliberate indifference on the part of the City toward people with whom the police come into contact. In Canton, the Court explained when inadequate police training constitutes city policy:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the

10

inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

489 U.S. at 390. The Court noted:

For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task Thus, the need to train officers in the constitutional limitations on the use of deadly force, can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

Id., n. 10 (citation omitted).

There was evidence presented to the district court that the officers received inadequate training on how to deal with mentally ill or emotionally upset persons who are armed with firearms. Plaintiff relied principally on her expert witness, Dr. George Kirkham, a former police officer and college professor and now a consultant on police and security matters. The record does not show that defendants challenged Dr. Kirkham's qualifications as an expert on police tactics and procedures.

Dr. Kirkham testified in his deposition that the officers' actions were reckless and totally contrary to proper police practices for dealing with armed mentally ill or emotionally upset persons. According to Dr. Kirkham, all authorities on police tactics and procedures, in both the law enforcement and expert witness communities, agree it is not appropriate to leave cover and approach a suicidal armed person to try to take away a gun. Such action is likely to provoke a violent response, resulting in a high risk of death

11

to officers, the armed person, and other civilians. Dr. Kirkham stated the proper procedure would have been for the officers to take cover behind their police cars, to ask the people standing by Allen's car to come toward them in order to get them out of harm's way and to obtain information, and then to try to communicate with Allen from a safe position without doing anything aggressive that could provoke a violent response.

In Dr. Kirkham's opinion, there were only two possibilities that could give rise to the present incident--either the officers failed to follow their training or they were improperly trained. Lieutenant Brook, the Muskogee Police Department training coordinator from 1984 to 1993, testified the officers acted in accordance with their training in approaching the car and trying to take away the gun. Relying principally on this testimony, Dr. Kirkham concluded the officers' training was inadequate. Dr. Kirkham was also aware that Lieutenant Smith testified he acted in accordance with his police training. Moreover, the affidavit of Glen McIntyre, the state firearms training coordinator, stated the officers followed their training. The evidence supports an inference that the City trained its officers to leave cover and approach armed suicidal persons to try to disarm them.

Dr. Kirkham was highly critical of the officers' training:

> I don't believe you'll find any reputable expert in the United States, no one that I know of, that could possibly take the position in contradiction of virtually every piece of training material that I have ever seen that says you handle it in this way. These are such well established principles. I don't think a reputable specialist could say, "Hey, yeah. You walk-up to the situation, stand in the open, keep trying to grab the gun."

12

It is just reckless behavior.

Appellant's append. III at 572. He stated if the officers were trained to respond to this kind of call by staying in the open, leaving innocent people in the open, and doing provocative things like trying to grab the gun and get into the car, the training was "out of synch with the entire United States in terms of what police are being trained to do." Id. at 576.

> To my knowledge, I'm not aware of any significant debate in the law enforcement or expert witness community about the fundamental principles we're talking about here. Cover is better than no cover. Communicating from a safe distance is better than not. Getting innocent people as safely out of the way as possible is desirable. Not engaging in certain actions with mentally disturbed armed people, not getting close to them is preferable.
> I've never heard any knowledgeable debate or argument about any of those subjects in the 25 years I've been doing this type of work.

Id. at 580. Referring to the training provided the officers through a state program, Dr. Kirkham stated:

> If the State of Oklahoma through CLEET trains their officers to not be mindful of cover, to be aggressive with mentally ill people, do all these things that are totally off the board, then the State is wrong and out of synch with the rest of the country in the police profession.

Id. at 592-93.

When read as a whole and viewed in the light most favorable to the plaintiff as the party opposing summary judgment, the record supports an inference that the City trained its officers to leave cover and approach armed suicidal, emotionally disturbed persons and

13

to try to disarm them, a practice contrary to proper police procedures and tactical principles.

The testimony of Lieutenant Brook and Lieutenant Smith and the affidavit of Glen McIntyre support an inference that the content of the training was inadequate. The City points to evidence that the officers completed many hours of training, including training on use of deadly force and dealing with upset or mentally disturbed people, but that cannot rebut the inference that the training was inadequate because it does not address the content of that training.

Relying on Evers v. General Motors Corp., 770 F.2d 984 (11th Cir. 1985), the City argues Kirkham's deposition must be disregarded as insufficient to raise genuine issues of material fact regarding the adequacy of the training. In Evers, the court held a four-paragraph affidavit by plaintiff's expert witness was insufficient to create genuine issues of material fact because its conclusory allegations were not based on specific facts. Dr. Kirkham's deposition is not comparable to the brief conclusory affidavit in Evers. The deposition is over 300 pages in length and Dr. Kirkham's opinion was based on specific facts in the record. His extensive and detailed testimony shows that although he may not have read all relevant documents, he was very familiar with the circumstances of the incident. See Russo v. City of Cincinnati, 953 F.2d 1036, 1046-47 (6th Cir. 1992) (rejecting argument that testimony of plaintiff's expert in police procedures was conclusory and insufficient to preserve genuine question of material fact over city's

14

liability).  Cf. Baker v. Putnal, 75 F.3d 190, 199 (5th Cir. 1996) (unsubstantiated conclusions in affidavit of purported expert insufficient to preclude summary judgment in favor of city); Benavides v. County of Wilson, 955 F.2d 968, 973 (5th Cir.) (deposition of purported expert giving only subjective opinion not based on factual foundation or proven expertise  insufficient to preclude summary judgment in favor of city), cert. denied 506 U.S. 824 (1992); Allen v. Cook, 668 F. Supp. 1460 (W.D. Okla. 1987) (unsubstantiated conclusions in affidavit of plaintiff's expert insufficient to preclude summary judgment in favor of city).

Dr. Kirkham characterized the officers' actions in this case as diametrically opposed to proper police procedures, out of synch with the rest of the police profession, and "plain foolishness."  Because there was evidence that the officers acted in accordance with their training, his criticism also applied to their training.  When viewed in the light most favorable to the plaintiff, the record contains evidence that the officers were trained to act recklessly in a manner that created a high risk of death.  The evidence is sufficient to support an inference that the need for different training was so obvious and the inadequacy so likely to result in violation of constitutional rights that the policymakers of the City could reasonably be said to have been deliberately indifferent to the need.[1]

---

[1]  There is no contention that the training given the officers was anything other than official city policy and Lieutenant Brook's testimony that the officers followed their training in handling the incident tends to show it was official policy.  He was the training coordinator from 1984 to 1993.

As regards the fourth requirement, there was evidence of a direct causal link between the training and the alleged constitutional deprivation. According to Dr. Kirkham, approaching and trying to grab a gun from an emotionally disturbed, suicidal person created a high risk of death for officers, the armed person, and other civilians, and was reckless. There was evidence the officers were trained to act in such manner and, thus, were trained to do precisely the wrong thing. The causal link between the officers' training and the alleged constitutional deprivation is more direct than in cases in which officers are not given enough training to know the correct response to a dangerous situation. Dr. Kirkham attributed the incident to improper training, stating: "[I]f police trainers in the State of Oklahoma are using this case as an example of how you properly handle a mentally ill individual, then police officers will assuredly die, and other mentally ill people and probably innocent people will die." Appellant's append. III at 574. It was his opinion that if the officers had been properly trained in the fundamental principles of maintaining a covered position and trying to communicate with armed emotionally upset persons rather than approaching and physically attempting to disarm them, the incident would not have happened.

Because there was evidence supporting each of the requirements of Canton, as explained in Zuchel, the district court erred in entering summary judgment in favor of the City. City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985), does not require a different conclusion. In Tuttle, the Court held it was error to instruct a jury it could infer from a

16

single incident of unusually excessive force that the constitutional violation was attributable to a city policy of inadequate training or supervision. Here, plaintiff does not rely solely on proof of the single incident to support an inference that the incident was caused by inadequate training and that the inadequate training was city policy. She relies on evidence that the officers followed police training in recklessly rushing Allen's car and trying to disarm him. Tuttle and Canton do not require evidence of more than one incident to establish a policy of inadequate training and that the training caused the constitutional deprivation. These cases simply require evidence in addition to the occurrence of a single incident. A plaintiff can properly rely on the single incident if there is other evidence of inadequate training. See Vineyard v. County of Murray, 990 F.2d 1207, 1212-14 (11th Cir.), cert. denied 510 U.S. 1024 (1993); Russo, 953 F.2d at 1041, 1046-48; Bordanaro v. McLeod, 871 F.2d 1151, 1159-63 (1st Cir.), cert. denied 493 U.S. 820 (1989); Grandstaff v. City of Borger, 767 F.2d 161, 169-72 (5th Cir. 1985); Diaz v. Salazar, 924 F. Supp. 1088, 1098-99 (D. N.M. 1996). By providing direct evidence of inadequate training, as discussed above, plaintiff provided sufficient evidence beyond the occurrence of the single incident to withstand summary judgment.

Nor does Brown, 117 S. Ct. 1382, require a different result. The case before us is within the "narrow range of circumstances" recognized by Canton and left intact by Brown, under which a single violation of federal rights may be a highly predictable consequence of failure to train officers to handle recurring situations with an obvious

17

potential for such a violation. The likelihood that officers will frequently have to deal with armed emotionally upset persons, and the predictability that officers trained to leave cover, approach, and attempt to disarm such persons will provoke a violent response, could justify a finding that the City's failure to properly train its officers reflected deliberate indifference to the obvious consequence of the City's choice. The likelihood of a violent response to this type of police action also may support an inference of causation--that the City's indifference led directly to the very consequence that was so predictable.

REVERSED and REMANDED.

No. 96-7021, Allen v. City of Muskogee.

KELLY, Circuit Judge, dissenting in part.

I respectfully dissent from Section II of the court's opinion. Permitting this case against Muskogee to go forward reverses the burden that the Supreme Court has deliberately chosen to place on the party opposing a motion for summary judgment. It also is inconsistent with the strict standard placed upon § 1983 plaintiffs in cases such as this one, where there has been absolutely no showing of a pattern of constitutional violations which might have put the City of Muskogee on notice that its training program was inadequate. See Board of the County Comm'rs v. Brown, 117 S. Ct. 1382, 1391 (1997); City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989).

The court views this case as one in which "evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation . . . trigger[s] municipal liability." Brown, 117 S. Ct. at 1391 (citing Canton, 489 U.S. at 390 & n.10). Although sufficient evidence of a single violation of federal rights exists, Ms. Allen has not made any showing—much less a sufficient showing—of an inadequate policy, nor is there proof that the allegedly inadequate policy presented such an "obvious potential" for constitutional harm that liability can or should be triggered.

The evidence is insufficient to establish the inadequacy of Muskogee's training because absolutely no evidence exists regarding the content of Muskogee's training. The court observes that none of the evidence in this case addresses the content of Muskogee's

training, and assumes that it was Defendants' burden to put forward that content. <u>See</u> Ct. Op. at 13. The summary judgment standard, however, clearly places that burden on Ms. Allen. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (stating that the plain language of Fed. R. Civ P. 56(c) mandates entry of summary judgment if nonmoving party fails to make a showing sufficient to establish an element, and on which that party will bear the burden of proof at trial). Ms. Allen does not dispute that the Muskogee training exceeds Oklahoma's requirements for law enforcement training. In fact, the only evidence on the content of Muskogee's training at all are affidavits of two law enforcement officials that the individual officers acted in accord with that training. Ms. Allen's expert, Dr. Kirkham, stated that because the officers' actions were, in his opinion, contrary to proper police practices, and because two law enforcement officials stated that the officers acted in accord with their training, then Muskogee's training must have been inadequate. Dr. Kirkham admitted, however, that he had not read either Muskogee's or Oklahoma's training materials. The court emphasizes that this evidence supports an "inference" that the City of Muskogee inadequately trained its police officers.[1] Although we must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable. <u>Gullickson v. Southwest Airlines Pilots' Assoc.</u>, 87 F.3d 1176, 1183 (10th Cir. 1996) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587

---

[1] At the end of Section II, this "inference," <u>see</u> Ct. Op. at 13, 15, has metamorphosed into "direct evidence" of inadequate training, <u>see</u> Ct. Op. at 16-17.

2

(1986)). Dr. Kirkham's testimony, grounded in speculation, may raise an inference that Muskogee inadequately trained its officers, but it is not sufficient to withstand summary judgment. Rather, this inference, if it can be so called, constitutes, at best, a "mere scintilla" of evidence, on which a judgment in favor of the nonmovant cannot be upheld. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Even assuming that Ms. Allen has put forward sufficient evidence of inadequate training, that is still not enough under the circumstances. The evidence is not even close to establishing the kind of inadequate training that is "so obvious, and . . . so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Canton, 489 U.S. at 390. In most cases, plaintiffs meet this standard by demonstrating that a pattern of constitutional violations has put the municipality on notice that its training is inadequate, and that the municipality's continued adherence to its training thus constitutes deliberate indifference. See, e.g., Brown, 117 S. Ct. at 1390 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be on notice that a new program is called for."); Zuchel v. City and County of Denver, 997 F.2d 730, 740-41 (10th Cir. 1993) (holding that the defendant municipality was deliberately indifferent when it failed to change its training despite six deadly force incidents within a six-week time period, and despite repeated requests by the district attorney for new training). In this case, however, there is no allegation that previous similar incidents had put the City

3

of Muskogee on notice that its training was inadequate.  The Supreme Court has cautioned that in such cases, plaintiffs will succeed only in a "narrow range of circumstances."  Brown, 117 S. Ct. at 1391.  Thus, Ms. Allen must prove deliberate indifference by showing that a violation of federal rights was a "highly predictable" consequence of its failure to adequately train its police officers.  Id.  The mere fact that city police officers may have acted unconstitutionally cannot be the basis for municipal liability.  Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1977) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."); see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which . . . can be attributed to a municipal policymaker.").

Given that there was no evidence before the court regarding the content of Muskogee's training, any deliberate indifference exhibited by Muskogee is pure speculation and conjecture.  I do not believe there exists any evidence tending to place Plaintiff's case within the "narrow range of circumstances" in which liability may attach without any pattern of past constitutional violations.  Ms. Allen has failed to make a showing sufficient to establish an element on which she would bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  Accordingly, I would affirm as to the City of Muskogee.

4