This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40035

BARBARA CORDOVA, Personal
Representative of the Wrongful
Death Claim of the ESTATE OF
DANIEL SAAVEDRA; and ANGEL
SAAVEDRA, on her own behalf
for loss of consortium,

      Plaintiffs-Appellants,

v.

CITY OF ALBUQUERQUE,

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
Nancy J. Franchini, District Court Judge

The Kennedy Law Firm, P.C.
Joseph P. Kennedy
Shannon L. Kennedy
Albuquerque, NM

for Appellants

Stephanie M. Griffin, Deputy City Attorney
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**ATTREP, Chief Judge.**

**{1}** Plaintiffs, a family member and the personal representative of the estate of Daniel Saavedra (Decedent), appeal the district court's grant of summary judgment in

favor of the City of Albuquerque (Defendant). Plaintiffs contend the district court erred by concluding that (1) their assault and battery claim failed as a matter of law because police officers used reasonable force when they shot and killed Decedent, and (2) the grant of summary judgment on their assault and battery claim necessarily resolved Plaintiffs' negligent supervision claim in Defendant's favor. We affirm.

## BACKGROUND

**{2}**     The material facts are not disputed. Decedent was shot and killed by Albuquerque Police Department officers responding to a 911 call made by an apartment manager who reported that an unidentified male, later identified as Decedent, had unlawfully entered a vacant apartment shortly before midnight. After nearly an hour of attempting to communicate with Decedent to convince him to exit the apartment, police officers decided to enter the apartment and clear each room "to make sure that the residence was safe." Decedent was hiding in a closet in one of the bedrooms, and when police officers opened the closet door, he lunged toward a police officer while swinging a metal pipe and knife. Decedent continued to move toward the police officer despite being commanded to stop and being tased by another officer. In response, the officers discharged their firearms, killing Decedent.

**{3}**     Plaintiffs sued Defendant, under NMSA 1978, Section 41-4-12 (1976, amended 2020) of the New Mexico Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020), for assault and battery and negligent supervision.[1] Defendant moved for summary judgment, arguing that Plaintiffs' assault and battery claim failed because the police officers' use of deadly force was objectively reasonable under the federal Fourth Amendment test for excessive force, as set forth in *Graham v. Connor*, 490 U.S. 386 (1989); and, as a result, Defendant was immune from suit under the TCA. Defendant further argued that Plaintiffs' negligent supervision claim failed because it was derivative of the assault and battery claim. Plaintiffs conceded that, at the time he was shot, Decedent constituted a "mortal threat" to the police officers. Nonetheless, relying on precedent from the United States Court of Appeals for the Tenth Circuit, Plaintiffs argued that the police officers did not use reasonable force because they recklessly created the need to use deadly force against Decedent. The district court ruled that the police officers' use of force was reasonable under *Graham*; and that even considering other federal authority cited by Plaintiffs, the undisputed facts did not support a finding that the police officers acted recklessly. The district court thus granted summary judgment in favor of Defendant on all counts.

## DISCUSSION

**{4}**     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 12, 144 N.M. 314, 187 P.3d 179 (internal quotation marks and citation omitted). Although our review of the district court's grant of summary

---

[1]Plaintiffs also sued for loss of consortium, but they do not argue on appeal that the district court erred in granting summary judgment on this claim. We therefore give it no consideration.

judgment is de novo, *see Young v. Gila Reg'l Med. Ctr.*, 2021-NMCA-042, ¶ 27, 495 P.3d 620, it is Plaintiffs' burden to demonstrate that the district court erred, *see Premier Tr. of Nevada, Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261 (providing that "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred"); *see also Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 ("[The a]ppellant must affirmatively demonstrate its assertion of error.").[2]

## I.    Assault and Battery

**{5}**    The district court granted summary judgment on Plaintiffs' assault and battery claim based on its conclusion that the police officers used reasonable force against Decedent. Plaintiffs contend this was error because, according to them, the facts show that the officers recklessly created the need to use lethal force. In advancing this argument, Plaintiffs primarily rely, as they did below, on case law from the Tenth Circuit addressing Fourth Amendment excessive force claims, and they focus their analysis on *Sevier v. City of Lawrence*, 60 F.3d 695 (10th Cir. 1995), and *Bond v. City of Tahlequah*, 981 F.3d 808 (10th Cir. 2020), *rev'd*, 595 U.S. 9 (2021) (per curiam). Even if we assume, for purposes of this opinion, that this Tenth Circuit precedent sets out the applicable legal framework, it is of no assistance to Plaintiffs.[3] We explain.

**{6}**    Relying on *Graham*, the Tenth Circuit in *Sevier* explained that a defendant officer's "use of deadly force [will be] justified under the Fourth Amendment if a reasonable officer in [the defendant's] position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others." 60

---

2Plaintiffs' brief in chief is a near verbatim recitation of the arguments they presented to the district court, without a corresponding discussion of why the district court erred in rejecting these arguments. In light of this presentation, we are given little reason to reach a result contrary to the district court's. *See Goodman v. OS Rest. Servs. LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 ("[T]here is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)).

3This Court, in *Hernandez v. Parker*, 2022-NMCA-023, 508 P.3d 947, recently explained that assault and battery claims brought pursuant to the TCA are distinct from excessive use of force claims alleging a violation of the Fourth Amendment. *See id.* ¶¶ 3, 10-13, 26-32, 34-35 (discussing the differences between civil assault and battery claims brought under the TCA and federal claims alleging a violation of the Fourth Amendment's right to be free from unreasonable seizure). *Hernandez* was decided more than seven months before the parties submitted their briefing in this case. The parties, however, both below and on appeal, premise their arguments on Fourth Amendment jurisprudence. We thus proceed by reviewing the district court's grant of summary judgment "in light of the arguments made to it," *Trujillo v. Presbyterian Healthcare Servs., Inc.*, 2024-NMCA-004, ¶ 22, 539 P.3d 1216, *cert. granted* (S-1-SC-40109, Nov. 29, 2023), and we do not consider arguments not made by the parties on appeal, *see Pirtle v. Legis. Council Comm. of N.M. Legislature*, 2021-NMSC-026, ¶ 58, 492 P.3d 586 ("As a general rule, appellate courts rely on adversarial briefing to decide legal issues and avoid reaching out to construct legal arguments that the parties, intentionally or otherwise, have not presented."); *see also In re Doe*, 1982-NMSC-099, ¶ 3, 98 N.M. 540, 650 P.2d 824 (providing that appellate courts should not consider arguments not raised by the parties because "courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories" (alteration, internal quotation marks, and citation omitted)).

F.3d at 699 (citing *Graham*, 490 U.S. at 396). *Sevier*, however, went beyond *Graham* by stating that the reasonableness of a police officer's "actions depends both on whether the officers were in danger at the precise moment that they used force and on whether [the officer's] own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Sevier*, 60 F.3d at 699 (footnote omitted). Plaintiffs argue that *Sevier* held the officers in that case "unreasonably creat[ed] a confrontation with the [decedent], . . . [and therefore] the [plaintiffs] could prevail on an excessive force claim." The Tenth Circuit, however, reached no such conclusion because the court determined it lacked jurisdiction to hear the appeal. *See id.* at 697, 700-02; *see also Bond*, 595 U.S. at 13 ("As for *Sevier*, that decision merely noted in dicta that deliberate or reckless preseizure conduct can render a later use of force excessive before dismissing the appeal for lack of jurisdiction."). Nonetheless, to the extent the Tenth Circuit suggested the plaintiff could prevail under the circumstances in *Sevier*, those circumstances diverge significantly from the facts of this case. The officers in *Sevier* knew that the decedent was experiencing a mental health crisis, that he was armed, and that he had not committed a crime. *See Sevier*, 60 F.3d at 697-98. Thus, "the record reveal[ed] some evidence upon which a jury could conclude that [the officers] acted recklessly by confronting [the decedent] in the manner that they did after *knowing* that he was armed and distraught over problems he was having with his girlfriend, and without gathering more information on the situation." *Id.* at 701 n.10 (emphasis added). In contrast, here there is no evidence the officers knew Decedent was armed or suffering from a mental health crisis before they entered the apartment. *Sevier* is inapposite.

{7}      Plaintiffs' reliance on *Bond* is likewise of no assistance to them.[4] Plaintiffs rely on *Bond* for the proposition that the "officers unnecessarily placed themselves at risk and then used deadly force because of their proximity to [Decedent]." *See Bond*, 981 F.3d at 818 ("[T]he totality of the facts to be considered in determining whether the level of force was reasonable includes any immediately connected actions by the officers that escalated a non-lethal situation to a lethal one."). In *Bond*, the Tenth Circuit determined that "a reasonable jury could conclude [the decedent] did not make any movements to put the officers in fear of serious physical harm," *id.* at 821, and the decedent's action of arming himself with a hammer was made in direct response to the officers drawing their weapons, *id.* at 823-24. From this, the Tenth Circuit concluded that "a jury could reasonably determine that the officers . . . unreasonably escalated a non-lethal situation into a lethal one through their own deliberate or reckless conduct." *Id.* at 824. In contrast to the circumstances in *Bond*, it is undisputed that Decedent lunged toward a police officer, swinging a metal pipe and knife, and continued to move toward the police officer despite being commanded to stop and being tased. Put simply, Decedent's violent acts

---

4In a per curiam decision, the United States Supreme Court reversed the Tenth Circuit in *Bond* on the ground that "the officers plainly did not violate any clearly established law." 595 U.S. at 12. The Supreme Court did not "decide whether the officers violated the Fourth Amendment in the first place, or whether recklessly creating a situation that requires deadly force can itself violate the Fourth Amendment." *Id.* To the extent the Tenth Circuit's Fourth Amendment analysis in *Bond* continues to be persuasive authority in that circuit, it is not persuasive here for the reasons we discuss.

here are wholly unlike the decedent's acts in *Bond*, making the outcome in *Bond* unwarranted in this case.

**{8}** Lastly, Plaintiffs make much of the responding officers' decision not to use a K-9 unit to search the apartment, arguing that this failure recklessly created the officers' need to use force against Decedent. To the extent Plaintiffs' argument suggests that law enforcement officers have a duty to use the least intrusive means available to them, we note that Plaintiffs cite no legal authority to support this proposition and we therefore need not consider it. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (providing that "appellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists"). Moreover, the Tenth Circuit, upon which Plaintiffs rely so heavily, has, in fact, rejected this proposition. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001) (providing that when assessing a Fourth Amendment excessive force claim, "the reasonableness standard does not require that officers use alternative 'less intrusive' means" (internal quotation marks and citation omitted)).

**{9}** Given the arguments and authority presented in the face of Plaintiffs' admission that Decedent was a "mortal threat" at the time the police officers shot him, we perceive no error in the district court's conclusion that the officers used reasonable force. *See, e.g., Sevier*, 60 F.3d at 699 (providing that an officer's "use of deadly force [i]s justified under the Fourth Amendment if a reasonable officer in [the officer's] position would have had probable cause to believe that there was a threat of serious physical harm to themselves or to others"); *Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). The district court's grant of summary judgment on Plaintiffs' assault and battery claim is affirmed.

## II.    Negligent Supervision

**{10}** To support their contention that the district court erred by granting summary judgment on their negligent supervision claim, Plaintiffs cite *Quezada v. County of Bernalillo*, 944 F.2d 710 (10th Cir. 1991), a Tenth Circuit case construing the TCA. In addition to being non-binding on this Court, *see In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 29, 140 N.M. 879, 149 P.3d 976 ("[W]e are not bound by federal law when we interpret state law."), *Quezada* does not support Plaintiffs' position. *Quezada* recognizes that the TCA waives immunity for negligent supervision only "when 'the law enforcement officer, while acting within the scope of duty, negligently or intentionally *causes* the commission of a listed tort by another person.'" 944 F.2d at 719 (emphasis added) (quoting *Ortiz v. N.M. State Police*, 1991-NMCA-031, ¶ 4, 112 N.M. 249, 814 P.2d 117); *see also McDermitt v. Corr. Corp. of Am.*, 1991-NMCA-034, ¶ 1, 112 N.M. 247, 814 P.2d 115 ("[I]mmunity is not waived for negligent training and supervision standing alone; such negligence must *cause* a specified tort or violation of rights." (emphasis added)). In its answer brief, Defendant contends that because the

police officers used reasonable force, no enumerated tort was committed, and, as a result, Defendant cannot be held liable for negligent supervision. Plaintiffs did not file a reply brief and have left this contention unanswered. We thus may treat their lack of response as a concession on this matter. *Cf. Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (providing that when a reply brief does not address arguments made in an answer brief, "a failure to respond constitutes a concession on the matter"). Based on the foregoing, we conclude that Plaintiffs have not demonstrated error in the district court's grant of summary judgment on their negligent supervision claim.

**CONCLUSION**

**{11}**   For the foregoing reasons, we affirm.

**{12}**   **IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**